492 F.2d 268
 CUMMINGS WHOLESALE ELECTRIC CO., INC., Plaintiff-Appellant,
v.
HOME OWNERS INSURANCE COMPANY et al., Defendants-Appellees.
James BAYLOR, Plaintiff and Counter-Defendant-Appellee,
v.
OTTO ELECTRIC COMPANY, INC., et al., Defendants.
DELPHI COMMUNITY SCHOOL BUILDING CORP., Plaintiff-Appellant,
v.
NORTHEASTERN INSURANCE COMPANY OF HARTFORD et al.,
Defendants-Appellees.
 Nos. 73-1049, 73-1061, 73-1062 and 73-1070.
 United States Court of Appeals, Seventh Circuit.
 Heard Jan. 9, 1974.
Decided Feb. 21, 1974, Rehearing En Banc Denied March 25,
1974, No. 73-1070.
 
 Henry J. Price, Stephen K. Smith, Indianapolis, Ind., for appellants in No. 73-1049.
 William M. Evans, Indianapolis, Ind., for appellants in Nos. 73-1061 and 73-1062.
 Alan H. Lobley, D. Robert Webster, Charles J. Todd, Indianapolis, Ind., and Lewis N. Mullin, Delphi, Ind., for appellants in No. 73-1070.
 Charles W. Linder, Jr., Sydney L. Steele, James W. Riley, Jr., Indianapolis, Ind., for appellees Nationwide Mutual Ins. Co., Northeastern Ins. Co. of Hartford, and Allstate Ins. Co.
 Nicholas C. Nizamoff, Richard H. Riegner, William A. Wich, Indianapolis, Riegner, William A. Wick, Indianapolis, in No. 73-1070 and appellee in all other cases.
 Before CUMMINGS and STEVENS, Circuit Judges, and GRANT, Senior District Judge.*
 CUMMINGS, Circuit Judge.
 
 
 1
 These appeals involve common issues concerning plaintiffs' rights against the reinsurers of the insolvent Home Owners Insurance Company, which had issued certain surety bonds in Indiana.
 
 
 2
 In No. 73-1049, plaintiff Cummings Electric furnished more than $120,000 worth of materials to Otto Electric Company, which became insolvent. Home Owners had written surety bonds for Otto Electric. Home Owners in turn had reinsurance agreements with the three defendant reinsurers. Home Owners also became insolvent and was undergoing liquidation in Illinois. Plaintiff obtained a default judgment against Home Owners on August 27, 1971. Through negotiations with its liquidator, the default judgment was vacated and a consent decree filed nunc pro tunc as of Pril 14, 1972, against the liquidator. Plaintiff filed an amended complaint on Pril 17, 1972, to join the defendant reinsurers who had been ceded portions of Home Owners' risks on the surety bonds. Judge Noland granted the reinsurers' and liquidator's motions to dismiss the amended complaint without prejudice in an order not containing any reasons for the dismissal.
 
 
 3
 In Nos. 73-1061 and 1062, two Indiana public school building corporations filed counterclaims against Home Owners. They were obligees on 1969 performance bonds securing the completion of electrical work to be done by Otto Electric on two new public high school buildings in Indiana. These counterclaims sought the recovery of all costs and expenses incurred by the schools in completing the electrical work for their high school buildings following the default of Otto Electric. On December 17, 1971, the defendant school building corporations filed their amended supplemental counterclaim seeking judgment against the three reinsurance companies and the liquidator of Home Owners. In his two orders dismissing the counterclaimants' actions without prejudice, Judge Steckler explained:
 
 
 4
 'This dismissal does not operate as an adjudication upon the merits, and Counter-Claimants and Third-Party Plaintiffs are free to pursue their claim in the proper forum, i.e., the Illinois liquidation proceedings of Home Owners Insurance Company (brought in the Circuit Court of Sangamon County, Illinois).'[1]
 
 
 5
 In No. 73-1070, another Indiana public school building corporation entered into a contract with Otto Electric Company for work to be performed in constructing Delphi Community High School. Otto Electric entered into a performance bond and labor and materials bond with Home Owners as surety for $344,888. After partial performance Otto Electric defaulted and plaintiff expended $176,146.70 to complete the unperformed work. Plaintiff used the reinsurers without joining the liquidator of Home Owners. In an unreported opinion granting the reinsurers' motion to dismiss, Judge Eschbach held that the liquidator of Home Owners was an indispensable party and could not be joined because of the April 8, 1971, injunction of the Circuit Court of Sangamon County, Illinois, restraining all persons with claims against Home Owners from asserting any claim against the liquidator except in the Illinois liquidation proceedings. As in Nos. 73-1061 and 1062, the court stated that plaintiff was free to pursue its claim in the Illinois liquidation proceedings of Home Owners.
 
 
 6
 These various appeals involve the proper construction to be given to Ind.Code 1971, 27-1-13-6 (Burns 39-4307), which was enacted as Section 175 of the 1935 Indiana Insurance Law and provides as follows:
 
 
 7
 'Limitation of risks.-- No company organized to make any kind or kinds of insurance included in class II and class III of section fifty-nine (39-3501) shall take, on any one (1) risk of whatever nature, a sum exceeding one-tenth (1/10) part of its paid-up capital, surplus, and contingent reserves, if any, if a stock company or one-tenth (1/10) part of its surplus and contingent reserves, if any, if other than a stock company. No portion of any such risk or hazard which shall have been reinsured in a corporation authorized to do insurance business in this state shall be included in determining the limitation of risk prescribed in this section: Provided, That this section shall not apply to marine insurances, or to companies organized to make life insurance.
 
 
 8
 'No stock or mutual insurance company transacting fidelity or surety business in his state shall expose itself to any loss on any one (1) fidelity or surety risk or hazard in an amount exceeding ten per cent (10%) of its capital, surplus and contingent reserves, if any, unless it shall be protected in excess of that amount by: (a) Reinsurance in a company authorized to transact the fidelity or surety business in this state, provided that such reinsurance is in such form as to enable the obligee or beneficiary to maintain an action thereon against the company reinsured jointly with such reinsurer and, upon recovering judgment against such reinsured, to have recovery against such reinsurer for payment to the extent in which it may be liable under such reinsurance and in discharge thereof; or (b) the cosuretyship of such a company similarly authorized: or (c) by deposit with it in pledge or conveyance to it in trust for its protection of property; or (d) by conveyance or mortgage for its protection; or (e) in case a suretyship obligation was made on behalf or on account of a fiduciary holding property in a trust capacity, by deposit or other disposition of a portion of the property so held in trust that no future sale, mortgage, pledge or other disposition can be made thereof without the consent of such company; except by decree or order of a court of competent jurisdiction: Provided: (1) That such a company may execute what are known as transportation or warehousing bonds for United States internal revenue taxes to an amount equal to fifty per cent (50%) of its capital, surplus and contingent reserves, if any: (2) that, when the penalty of the suretyship obligation exceeds the amount of a judgment described therein as appealed from and thereby secured, or exceeds the amount of the subject-matter in controversy or of the estate in the hands of the fiduciary for the performance of whose duties it is conditioned, the bond may be executed if the actual amount of the judgment or the subject-matter in controversy or estate not subject to supervision or control of the surety is not in excess of such limitation; and (3) that, when the penalty of the suretyship obligation executed for the performance of a contract exceeds the contract price, the latter shall be taken as the basis for estimating the limit of risk within the meaning of this section. No such company shall, anything to the contrary in this section notwithstanding, execute suretyship obligations guaranteeing the deposits of any single financial institution in an aggregate amount in excess of ten per cent (10%) of the capital, surplus and contingent reserves, if any, of such corporate surety, unless it shall be protected in excess of that amount by credits in accordance with subdivisions (a), (b), (c) or (d) of this paragraph.'
 
 
 9
 This statute was apparently modeled on a comparable New York statute (Laws of 1920, ch. 563, 3, now as amended McKinney's Consol. Laws, ch. 28, Insurance Law 47, 315). However, we have found no cases or legislative history under either statute to illuminate the meaning of the critical, italicized proviso.
 
 
 10
 The Indiana legislature required that these reinsurance policies be 'in such form' as to permit the obligee or beneficiary to sue the reinsured and reinsurer jointly. Paragraph 14 of the General Reinsurance Agreement sufficiently satisfies this requirement.[2] Because of the mandate of Section 4307, we reject the reinsurers' argument that Paragraph 14 is inconsistent with Article XIV of the Separate Reinsurance Agreements[3] and hence was not incorporated therein by Article XI thereof.[4] This does not require a strained construction of Article XIV, since it only relates to payments during insolvency, and as will be seen, Section 4307 grants no preference and authorizes no direct action after liquidation proceedings begin. Because no part of any of the agreements other than Paragraph 14 of the General Agreement gives the insured any rights against the reinsurers, we hold that these agreements provide such rights only to the extent necessary to comply minimally with Section 4307.
 
 
 11
 The various insured claimants in these cases were given a direct right of action against the reinsurers by virtue of Section 4307 and Paragraph 14 of the General Reinsurance Agreement. While each case presents different procedural problems relating to whether or not the insurer and reinsurers were sued 'jointly,' we conclude that at least in Nos. 73-1061 and 1062 the procedural requirements of Section 4307 were satisfied. It therefore becomes necessary to decide whether the right to sue the reinsurers directly survived the insolvency of Home Owners and gave claimants a preference in the reinsurance proceeds over the general creditors.
 
 
 12
 Under common law principles followed in Indiana, obligees such as these claimants have no rights to reinsurance proceeds unless the insurance agreements so provide. Therefore, upon the insolvency of the insurer, the proceeds of the reinsurance are assets to be distributed among the general creditors of the insured. Florida ex rel. O'Malley v. Department of Insurance, Ind.App., 291 N.E.2d 907, 913 (1973); United States v. Federal Surety Co., 72 F.2d 964, 967 (4th Cir. 1934), certiorari denied, 294 U.S. 711, 55 S.Ct. 508, 79 L.Ed. 1245. We turn to Section 4307 to see if the contractual incorporation of that statute changes the common law result.
 
 
 13
 While we agree with claimants that Section 4307 accorded them a direct right of action against the insurer jointly with the reinsurers, we do not agree that the Indiana Legislature intended to give them a preference over the general creditors of an insolvent reinsured. When the General Assembly enacted the 1935 Indiana Insurance Law, it disfavored granting preferences in assets of insolvent insurance companies. Thus Section 37(b) of the 1935 law, now Ind.Code 27-1-4-9 (Burns 39-3409(b)), provides that an Indiana liquidation court may issue any orders necessary to prevent the obtaining of any preferences against any part of the assets of an insolvent insurance company. Similarly, Section 38, now Ind.Code 27-1-4-10 (Burns 39-3410), provides that if an insurance company is in liquidation in Indiana, no suit can be maintained against the company outside the liquidation proceedings. Since Section 4307 specifies that the reinsurer be sued jointly with the insurer, Section 3410 would prevent any suit under an agreement minimally complying with Section 4307, once Indiana liquidation proceedings had begun.[5] We do not believe a different result was intended when the liquidation proceeding takes place outside Indiana.
 
 
 14
 When the legislature intended to grant a preference, it did so explicitly, as in Section 43 of the 1935 Act, now Ind.Code 27-1-4-15 (Burns 39-3415), which provides that certain wage claims 'shall be paid prior to the payment of every other debt or claim * * *.' We conclude that if the Indiana Insurance Law were intended to give claimants a preference in the assets of an insolvent insurance company, the statutory expression would have been equally explicit. Out determination that there is no preference leads to the conclusion that the direct cause of action does not survive the commencement of liquidation proceedings. It would obviously be impossible for the district courts in these cases to determine the share to which each claimant would be entitled if it participated on a non-preferential basis in the Illinois liquidation proceeding. Conversely, since claimants are not entitled to a preference, they will not be prejudiced if the Illinois court refuses to apply Indiana law.
 
 
 15
 In arguing for preferences, counterclaimants in Nos. 73-1061 and 1062 have relied on First National Bank of Kansas City v. Higgins, 357 S.W.2d 139 (Mo. 1962). However, the Supreme Court of Missouri recognized the general rule that 'the liability of the insuring company is solely to the reinsured company, or to its receiver, in the event of its insolvency.' 357 S.W.2d at 143. The court held that although the reinsured had become insolvent, the reinsurer was directly liable to the injured plaintiff because of a provision in the reinsurance contract that the 'liability of (reinsurer) shall follow that of (reinsured) in every case and be subject in all respects to all the general and special stipulations, clauses, waivers and modifications of (reinsured's) policy, binder, or other undertaking and any endorsements thereon * * *.' 357 S.W.2d at 144. This clause was held to incorporate a clause of the reinsured's auto liability policy which provided that a party who had obtained a tort judgment against the insured could sue the insurer directly. In the present case, neither the General nor Separate Reinsurance Agreements contains such an incorporation clause, so that Higgins is inapt. For similar reasons, Federoff v. Ewing, 386 Mich. 474, 192 N.W.2d 242 (1971), vacating, 29 Mich.App. 1, 185 N.W.2d 79 (1970), is inapplicable.
 
 
 16
 This construction does not leave Section 4307 without a purpose. Taken as a whole, the Section is designed to protect insurance companies against insolvency. It prevents insurance companies from committing more than 10% Of their assets to any one risk. Where there is a chance that the insurer will be unable to pay a large claim, the insured has an incentive to join the reinsurer as a defendant in any suit. The direct action proviso thus reduces the chances that the insurer will be forced into insolvency during the interval between the time judgment is rendered against it and the time it can collect from the reinsurer. If the insurer nevertheless becomes insolvent, continued operation of the direct action proviso would lead to a multiplicity of litigation and a preference for large risks. Since multiple litigation would waste the assets of the insolvent estate, and insureds with large risks have more incentive to protect themselves by investigating the financial status of the insurer before accepting it as surety, we are confident that the legislature did not intend to give them a direct cause of action to secure preferences from the reinsurers.
 
 
 17
 What we have said applies to all four cases. Because the incorporation of Section 4307 into the reinsurance agreements creates no preference and no cause of action which survived the insolvency of Home Owners, none of the insured can collect on their claims except through the Illinois liquidation proceedings. It is therefore unnecessary to decide the many other issues raised in the briefs.
 
 
 18
 The four dismissal orders are affirmed.
 
 
 
 *
 Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation
 
 
 [1]
 Judge Dillin dismissed similar counterclaims of two other Indiana public school building corporations on comity grounds in Nos. IP 70-C-202 and 218 (S.D.Ind. October 30 and 31, 1973)
 
 
 [2]
 Paragraph 14 provides in part:
 'This Agreement shall be deemed to comply with any law, whenever applicable, which provides that the Obligee or other beneficiary of the Bond shall have the right to maintain an action on such an agreement against the Reinsurer.'
 
 
 [3]
 Article XIV of each Separate Reinsurance Agreement (with an immaterial variation) provides in part:
 'In the event of the insolvency of the Company, the Reinsurance under this Agreement shall be payable by the Reinsurer to the Company, or to its liquidator, receiver or statutory successor * * *.'
 
 
 [4]
 Article XI of each Separate Reinsurance Agreement provides:
 'All reinsurance effected in accordance with the provisions of this Agreement shall be subject to the terms and conditions of the General Reinsurance Agreement (revised February 1, 1950, and as amended from time to time) of the Surety Association of America, except to the extent that said Agreement is inconsistent with the provisions hereof.'
 
 
 [5]
 In the parallel New York statute, this result was avoided by Laws of 1939, ch. 882, 315, which, inter alia, added the language italicized below. McKinney's Consol.Law, ch. 28, Insurance Law, 315(1)(a) provides:
 '1. In applying the limitation of section forty-seven to fidelity and surety risks, the net amount of exposure on any one fidelity or surety risk shall, except as provided in subsection four, be deemed within the limit of ten per cent if such company is protected in excess of that amount by:
 '(a) reinsurance, in a company authorized to do such business in this state, which is in such form as to enable the obligee or beneficiary to maintain an action thereon against the ceding insurer jointly with the assuming insurer or, where the commencement or prosecution of actions against the ceding insurer has been enjoined by any court of competent jurisdiction or any justice or judge thereof, against the assuming insurer alone, and to have recovery against such assuming insurer for its share of the liability thereunder and in discharge thereof; * * *.'