Asociación de Garantía de Seguros Misceláneos de Todas Clases Excepto Vida, Incapacidad y Salud, conocida como Asociación de Garantía de Seguros Misceláneos, demandante y recurrida, *v.* Commonwealth Insurance Co., Rolando Cruz en su capacidad de Comisionado de Seguros de Puerto Rico, Skandia Insurance Company, Argonaut Insurance Company y Otros, demandados y recurrentes.

*Números:* R-80-330, R-80-332, R-80-333, R-80-334     *Resueltos:* 13 de abril de 1983

*Néstor Durán*, de *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria*, abogado de la recurrente Argonaut Insurance Company; *Carlos Rivera Vicente* y *Ana Matilde Nin Torregrosa*, de *Cancio, Nadal & Rivera*, abogados de la recurrida Asociación de Garantía de Seguros Misceláneos; *Jaime Pieras* de *Pieras & De La Mata*, abogado de Tiendas Barkers, Inc. y Franklin & Alexander Slater Walker of America, Ltd., codemandadas; *Agustín Collazo Mejía*, de la División Legal del Banco de Ponce, abogado de Investment Holding Corporation, codemandada; *Daniel R. Domínguez*, de *Lafitte & Domínguez*, abogado de Francisco Vega Otero, codemandado; *Francisco De Jesús Schuck* y *María del Carmen Taboas*, de *Fiddler, González & Rodríguez*, abogados de Overseas Realty Corporation, Wometco, Cervecería India y The Chase Manhattan Bank, codemandados; *Ramón Lloveras Otero*, abogado de Rexco Industries, Inc. y Universal Construction Corp., codemandadas; *Álvaro Calderón, Jr.* y *David Rivé Rivera*, de *Calderón, Rosa Silva & Vargas*, abogados de Pueblo International, Inc., co-

demandada; *Francisco J. Cobián*, abogado de Ciudad Interamericana, Inc., codemandada; *Arturo F. Porrata Pila*, abogado de Clínica Dr. Pila, codemandada; *Víctor Caparrós*, abogado de Commonwealth Insurance Company, codemandada; *Fernando Pérez Colón*, de *Hartzell, Ydrach & Mellado*, abogado de Skandia Insurance Company, codemandada; *Harold Vicente* y *Enrique Rebollo Portela*, de *Lasa & Vicente*, abogados de Midland Insurance Company, codemandada; *Héctor Martínez Muñoz*, de *Brown, Newsom & Córdova*, abogado de la Puerto Rico Telephone Company, codemandada; *Carlos Cebollero*, de *Brown, Newsom & Córdova*, abogado de la San Juan Racing Association, codemandada; *Brown, Newsom & Córdova*, abogados de Swiss Reinsurance Company y Chiyoda Fire & Marine Insurance Company, codemandadas; *R. Adolfo de Castro*, abogado de Prudential Reinsurance Company, Munich American Reinsurance Company y Employers Reinsurance Corporation, codemandadas; *Jacobo Ortiz Murias* y *José A. Sánchez Álvarez*, abogados de García Commercial Inc., codemandada; *Rafael Benet*, abogado de Isla Verde Hotel Corp., codemandada; *Alberto Picó*, de *Brown, Newsom & Córdova*, abogado de Underwriters At Lloyd's, codemandada; *Carlos A. López Lay*, de *López Lay & Vizcarra*, abogado de Plaza Las Américas, Inc., codemandada; *Jorge L. Martínez*, abogado de Hyatt Regency Puerto Rico, Inc., codemandada; *Patrick J. Wilson*, de *O'Neill & Borges*, abogado de Schiff Tertune, codemandada; *Manuel Moreda*, de *Moreda & Moreda Toledo*, abogado de Tierra, Inc., codemandada.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El Art. 4.130 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 413 (Supl. 1982), dispone en lo pertinente que un "asegurado original o tenedor de una póliza, . . . no tendrá ningún derecho de acción directo contra el reasegurador que no esté expresado en el contrato de reaseguro o en un convenio específico entre el reasegurador y tal asegurado original o tenedor de póliza". Un grupo de asegurados([1]) por la extinta aseguradora Commonwealth Insurance

---

([1]) Se mencionan en la demanda a los siguientes: Pueblo Supermarkets y/o [*sic*] Pueblo International, Tiendas Barkers, Inc., Puerto Rico Telephone Company, The Regency Hotel of Puerto Rico y/o [*sic*] Simon Benus, Center Enter-

Co. ("Commonwealth"), en efecto obtuvo, por gracia de endosos anejados a los contratos de reaseguro, el derecho a dirigirse contra reaseguradores de Commonwealth "[*i*]*n the event that Commonwealth fails to pay, within the time provided in the above identified policy, any loss thereunder for which Commonwealth is legally liable*". Una sola controversia requiere decisión en esta acción sobre sentencia declaratoria instada por la Asociación de Garantía de Seguros Misceláneos: Se trata de determinar si ese derecho de acción directa contra el reasegurador que se consagró en los endosos de reaseguro, es exigible aun ante la insolvencia de Commonwealth y al margen del proceso de liquidación de ésta.(²) En sentencia parcial de 9 de junio de 1980, el Tribunal Superior determinó la vigencia del endoso para beneficio exclusivo de los tenedores de esas pólizas. El Comisionado de Seguros de Puerto Rico, como administrador-liquidador de Commonwealth, y las tres reaseguradoras concernidas(³) recurrieron. Consolidamos sus recursos. Acordamos revisar.

En su sentencia parcial de junio de 1980, el Tribunal Superior concluyó que los endosos anejados a los contratos de reaseguro de Commonwealth con Skandia, Argonaut y Midland en favor del grupo de asegurados, deben regirse por los principios de nuestro Derecho civil, rectores de los

prises, Inc., Wometco Commonwealth Corporation, Overseas Realty Corporation, Hospital San Jorge, Inc., Lucas Tomás Muñiz, Hospital del Maestro, Isla Verde Hotel Corporation, Investment Holding, Caribbean Consolidates Schools, Inc., Roosevelt Towers, Inc., Cervecería India, Inc., Ciudad Interamericana, Inc., Clínica Dr. Pila, Slater Walker of America Ltd., Suiza Dairy Corporation, Association of Owners of Cond. El Centro I y II, Leslie Heigh Fleming, Puerto Rico Highway Authority, El San Juan Hotel Corporation, Francisco Vega Otero, Universal Construction Corporation, Rexco Industries, Inc. Se consignó, además, que desconocía la demandante los nombres de otros demandados.

(²) Una segunda cuestión presentada ante el tribunal a quo —si son "reclamaciones cubiertas" por la demandante las reclamaciones de autos, 26 L.P.R.A. sec. 3802— pierde virtualidad ante nuestra decisión de hoy.

(³) Son éstas las compañías Midland Insurance Company ("Midland"), Skandia Insurance Company, Ltd. ("Skandia") y Argonaut Insurance Company ("Argonaut").

contratos en beneficio de terceros. Véanse, Código Civil, Art. 1209 (31 L.P.R.A. sec. 3374); *A. L. Arsuaga* v. *La Hood Cons., Inc.*, 90 D.P.R. 104, 109–114 (1964); *Ramírez Ortiz* v. *Gautier Benítez*, 87 D.P.R. 497, 520 (1963); y *National City Bank* v. *Guarch*, 50 D.P.R. 888, 893 (1937). Entendió, por tanto, que los endosos vinculaban a las reaseguradoras directamente con los asegurados originales de Commonwealth. Consideró también que la exigibilidad de esa obligación quedaba suspendida hasta tanto Commonwealth faltara al pago de las pólizas. Véase, Código Civil, Art. 1073 (31 L.P.R.A. sec. 3048). Enfrentado con el hecho de que la falta de pago por parte de Commonwealth respondió en este caso a su insolvencia y subsiguiente proceso de liquidación, el tribunal concluyó que las derramas que las reaseguradoras debían hacer por razón de los contratos de reaseguro objeto de esta acción, quedaron fuera del activo de Commonwealth, Código de Seguros, Arts. 5.010(1)(h) y 5.110(3), 26 L.P.R.A. secs. 501(1)(h) y 511(3), [4] por razón de que los endosos anejados a los contratos de reaseguro crearon el derecho del asegurado de acudir directamente contra el reasegurador. A juicio del tribunal a quo los endosos al contrato de reaseguro sustrajeron esos derechos de la "entera y exclusiva" pertenencia del asegurador, que establece el Art.

---

[4] El Art. 5.010(1)(h) dispone:

"(1) Al determinar la situación económica de un asegurador sólo se permitirá como activo el que perteneciere *entera y exclusivamente* al asegurador y consistiere de lo siguiente:

. . . . . . . .

"(h) Los reaseguros serán admitidos como activo o crédito, según se dispone en el Art. 5.110 de este Código." (Énfasis nuestro.)

Y el Art. 5.110(3):

"Un asegurador podrá obtener crédito por reservas sobre riesgos cedidos a un reasegurador, hasta la cantidad reasegurada, excepto que:

. . . . . . . .

"(3) No se concederá crédito como activo ni como deducción del pasivo a ningún asegurador cedente, a menos que el reaseguro sea pagadero por el reasegurador a base del pasivo del asegurador cedente, con arreglo a los contratos reasegurados, sin disminución por razón de insolvencia del asegurador cedente."

5.010(1) del Código de Seguros, 26 L.P.R.A. sec. 501(1). Toda vez que a juicio del tribunal de instancia los fondos provenientes de los contratos de reaseguros endosados no formaban parte del activo de Commonwealth sujeto a liquidación, concluyó que los "beneficiarios" de los endosos podrán acudir directamente contra las reaseguradoras. Como resultado, cobraban sus créditos totalmente sin someterse a las resultas de la distribución de los activos de Commonwealth en el proceso de liquidación en desarrollo. Al así determinar erró.

Los reaseguros permiten, como resume Garrigues, que el asegurador pueda explotar en forma nivelada y homogénea su negocio, proveyéndole la manera de transferir a otro asegurador un riesgo excesivo o de naturaleza extraña a su gestión. J. Garrigues, *Curso de derecho mercantil*, 6ta ed., Madrid, Imprenta Aguirre, 1974, T. II, pág. 277. Ahora bien, "y a pesar de la íntima relación que cada operación concreta de reaseguro mantiene siempre con otra operación de seguro directo, no puede decirse que sea un contrato accesorio de éste. La relación de ambos contratos entre sí no destruye su respectiva autonomía; sin perjuicio de que el seguro directo sea presupuesto necesario para el reaseguro, ambos contratos funcionan de modo autónomo y separado, sin que el asegurado tenga acción alguna contra el reasegurador ni éste contra aquél". R. Uría, *Derecho mercantil*, 11ma ed., Madrid, Imprenta Aguirre, 1976, pág. 604. *Cf. A/S Ivarans Rederei* v. *Puerto Rico Ports Authority*, 617 F.2d 903, 905 (1st Cir. 1980). Se sostiene que es muy posible que el establecimiento contractual de un vínculo demasiado estrecho entre "reasegurador y asegurado pueda alterar la esencia del verdadero *re*aseguro, acercando más la relación a, v. gr., una que merezca calificarse de *co*aseguro o, quizás, de fianza". 19 *Couch on Insurance 2d*, Rev. ed., Sec. 80:2. Lo determinante para establecer las consecuencias jurídicas de éste como de todo otro tipo de contrato es, desde luego, la clase de obligaciones que

genera y no el título con que las partes hayan tenido a bien denominarle. J. Appleman, *Insurance Law and Practice*, St. Paul, Minnesota, West Publishing Co., 1976, Vol. 13A, Sec. 7686.

El derecho de acción directa concedido a los asegurados en este caso, a la luz del Art. 4.130 del Código de Seguros, no alteró la relación entre Commonwealth, sus asegurados y sus reaseguradores al punto que impida que se incluya el producto de los reaseguros dentro del activo sujeto a distribución en la liquidación de la aseguradora. Véase, *Cummings Wholesale Elec. Co., Inc.* v. *Home Owners Ins. Co.*, 492 F.2d 268, 271–272 (7th Cir. 1974); *cert.* denegado, 419 U.S. 883 (1974).

En este caso, el texto de los endosos anejados a los contratos de Commonwealth con sus reaseguradoras proveyó a estos asegurados la oportunidad de dirigirse ellos mismos al reasegurador para obtener la correspondiente derrama de reaseguro, en caso de que la aseguradora no compensase en el tiempo convenido la pérdida cubierta. Es el endoso llamado *cut through* en la doctrina norteamericana. Éste simplemente provee al asegurado un recurso que, de ordinario, está reservado a su asegurador. No aumenta los riesgos al reasegurado ni al reasegurador. Tampoco deja de ser este endoso un mecanismo subsidiario dependiente de la responsabilidad del reasegurado. Commonwealth y sus reaseguradoras no se hallaban en circunstancia similar frente a los asegurados ni éstos tenían ante aquéllas derecho de términos iguales. Aun después de expedirse los endosos de reaseguro Commonwealth era, en circunstancias normales, la aseguradora de los riesgos de sus asegurados. Y todavía los reaseguradores eran, fundamentalmente, aseguradores del riesgo asumido por Commonwealth.([5]) El propósito de

---

([5])En efecto, una de las tres reaseguradoras presentes en esta litigación —Skandia— ni tan siquiera estaba autorizada para otorgar contratos de seguro directo en Puerto Rico.

los Arts. 5.010(1)(d)(6) y 5.110(7) quedó igualmente satisfecho y los reaseguros endosados deben considerarse parte del activo de Commonwealth. Es la solución justa.

■ En Puerto Rico, el proceso de liquidación de los activos de un asegurador insolvente se rige por las disposiciones de la Ley Uniforme de Liquidación de Aseguradores, incorporada a nuestro Derecho en los Arts. 40.070 a 40.140 del Código de Seguros, 26 L.P.R.A. secs. 4007–4014. Es propósito principal de esta legislación proveer un método justo y equitativo para la distribución de los activos de un asegurador en quiebra. Véanse, *Commissioners' Prefatory Note to the Uniform Insurers Liquidation Act*, 13 U.L.A. 429, 431 (1980); *Vlasaty* v. *Avco Rent-A-Car System, Inc.*, 304 N.Y.S.2d 118, 120 (1969). La Ley Uniforme se preocupó específicamente por corregir el desorden reinante con respecto a preferencias en liquidación. *Commissioners' Prefatory Note*, ante, pág. 431. Por eso, la distribución no debe reconocer más prioridades que aquéllas establecidas "de

---

(6) Establece el Art. 5.010(1)(d), 26 L.P.R.A. sec. 501(1)(d):

"(1) Al determinar la situación económica de un asegurador sólo se permitirá como activo el que perteneciere entera y exclusivamente al asegurador y consistiere de lo siguiente:

.     .     .     .     .     .     .     .

"(d) La cantidad neta de primas insolutas y aplazadas, y retribuciones de anualidades en el caso de un asegurador de vida."

(7) Dispone el Art. 5.110 (26 L.P.R.A. sec. 511):

"Un asegurador podrá obtener crédito por reservas sobre riesgos cedidos a un reasegurador, hasta la cantidad reasegurada, excepto que:

"(1) No se concederá crédito por reaseguro no autorizado por la sec. 412 de este título.

"(2) Las pérdidas o partes de las mismas pagadas por el asegurador cedente que fueren exigibles a un reasegurador autorizado para concertar seguros en Puerto Rico, podrán admitirse como activo del asegurador cedente.

"(3) No se concederá crédito como activo ni como deducción del pasivo a ningún asegurador cedente, a menos que el reaseguro sea pagadero por el reasegurador a base del pasivo del asegurador cedente, con arreglo a los contratos reasegurados, sin disminución por razón de insolvencia del asegurador cedente.

"(4) En otros respectos el Comisionado podrá conceder o retener créditos por reaseguro, de acuerdo con las normas y prácticas de contabilidad aplicables generalmente reconocidas y comúnmente seguidas por las autoridades inspectoras de seguros en Estados Unidos."

acuerdo con . . . el Art. 40.120" del Código de Seguros, 26 L.P.R.A. sec. 4012 (Supl. 1982). *Cf. Com. de Seguros* v. *Builders Ins. Co.*, 108 D.P.R. 625, 629 (1979). Las cortes han sido firmes en advertir la impropiedad de extender las preferencias de distribución sin que medie un expreso reconocimiento legislativo, *Cummings Wholesale Elec. Co., Inc.*, supra, pág. 272; *Foremost Life Ins. Co.* v. *Department of Ins.*, 409 N.E.2d 1092, 1095 (1980). Es razonable, pues, que en ausencia de acción legislativa clara —*cf. Turner Const. Co.* v. *Seaboard Sur. Co.*, 447 N.Y.S.2d 930, 935 n. 3 (1982); *Foremost Life Ins. Co.*, ante; J. R. Olson, *Reinsurers' Liability to the Insolvent Reinsured*, 41 Notre Dame Law. 13 *passim* (1965)— no se haya reconocido preferencia en liquidación a la acción directa de un asegurado contra el reasegurador sobre el derecho del liquidador que representa a los restantes asegurados. *Cummings Wholesale Elec. Co., Inc.*, ante.

Contrario a lo antes expuesto está *First National Bank of Kansas City* v. *Higgins*, 357 S.W.2d 139 (1962), pero el contrato de reaseguro presente en *Higgins* contenía cláusulas muy abarcadoras sobre la responsabilidad del reasegurador, véase *Cummings Wholesale Elec. Co., Inc.*, supra, págs. 272–273. Además, *People* v. *Cosmopolitan Insurance Company*, 233 N.E.2d 90, 92–93 (1967); *Fontenot* v. *Marquette Casualty Co.*, 247 So. 2d 572, 578–579 (1971); *McFarling* v. *Mayfield*, 510 S.W.2d 108, 110–111 (1974) (Op. concurrente J. Keith).

En el presente recurso, ni nos apuntan las partes ni hallamos nosotros que nuestro estatuto reconozca preferencia en liquidación a endosos de reaseguro como los presentes en esta acción. Véase, Código de Seguros, Art. 40.120, *ante*. Concluimos, por tanto, que deben los "beneficiarios" de dichos endosos someterse al proceso ordinario de liquidación de su aseguradora Commonwealth Insurance Co.

Tampoco nos persuade el argumento que ante nos esgrimen varios recurridos, sobre el efecto en liquidación de

los endosos. Sostienen que no es económicamente útil, en atención a los intereses en pugna, que los fondos provenientes de los reaseguros endosados entren al proceso de liquidación. Argumentan que por ser los "beneficiados" por los endosos, reclamantes de sumas grandes, el fondo de liquidación si bien no contará con una gran fuente, tampoco deberá enfrentar una gran reclamación. Argumenta asimismo, que en el proceso de liquidación sus reclamaciones grandes se verán afectadas más significativamente que las reclamaciones presumiblemente chicas de los asegurados no favorecidos con endosos.

■ El argumento es peregrino por demás. El hecho de que las reclamaciones más grandes queden excluidas de la liquidación, de permitirse la subsistencia de los endosos, no contradice el hecho de que la entrada de los fondos de reaseguro acrecentará el activo en liquidación para beneficio proporcional de todos los asegurados. No nos parece que se derive utilidad en permitir que un grupo limitado de asegurados satisfagan completamente sus grandes reclamaciones a costa del menoscabo de las reclamaciones de los asegurados pequeños. Todos pagaron proporcionalmente por el aseguramiento de sus riesgos y, ante la diversidad de su asegurador, parece equitativo y económicamente provechoso que reciban todos compensación proporcional al monto de sus pérdidas.

Considera Garrigues, al respecto, que es principio "injusto" el que, ante la quiebra del asegurador, obliga al asegurado a competir con todos los acreedores del quebrado por los fondos de reaseguro. Garrigues concedería un privilegio al asegurado sobre esos fondos; mas no distingue el autor entre asegurados. No cabe duda que concedería el privilegio a todos los asegurados, independientemente de que las pólizas tengan endosos como los del presente caso o no. *Op. cit.*, pág. 278.[8]

---

[8] Según obran en autos, los contratos de reaseguro y los endosos a favor de los asegurados recurridos refuerzan nuestra conclusión.

Constan en el récord tres tipos de contratos de reaseguro. En uno de ellos se

*En consideración de lo expuesto, se dictará sentencia en que se revoque la sentencia recurrida, y se devuelve el caso para que se dicte otra de conformidad.*

hace constar, claramente, que "[i]n the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer (on the basis of the liability of the Company under contract or contracts reinsured without diminution because of the insolvency of the Company) to the Company or to its liquidator, receiver or statutory successor". Este principio general se somete en estos contratos a tres condiciones. La primera hace referencia a la Sec. 315 de la Ley de Seguros del Estado de Nueva York, 27 Insurance Law, Sec. 315, y no aplica a estos casos. La segunda se refiere al caso en que se provee para otro beneficiario, distinto de la compañía, en caso de la insolvencia de ésta. El texto en inglés reza:

"Where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company and . . . ."

Tampoco favorece esta cláusula a los asegurados que fueron favorecidos por los endosos pues según transcritos por el tribunal sentenciador en sus conclusiones de hecho, ninguno de los endosos consideran el particular caso de insolvencia y se limitan a referirse, en términos generales, a la falta de pago por el asegurador. La tercera excepción, se refiere a casos en que, con el consentimiento del asegurado, el reasegurador asume las obligaciones de la aseguradora frente a los asegurados y *sustituye* así las obligaciones de tal aseguradora. El texto lee así en inglés:

"Where the Reinsurer, with the consent of the direct insured or insured, has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the Payees under such policies and in substitution of the obligations of the Company to such payees."

Y ya hemos visto antes que en los endosos a los contratos de reaseguro las reaseguradoras no asumieron las obligaciones de Commonwealth frente a los asegurados. Sencillamente se limitó el endoso a conceder acción directa contra el reasegurador, *sólo* en caso de que Commonwealth dejare de pagar. La obligación de las reaseguradoras no nacía de la ocurrencia de una pérdida cubierta, como nacía la de Commonwealth. La obligación de las reaseguradoras frente a los asegurados por virtud de los endosos era subsidiaria y requería, además, la falta de pago de Commonwealth.

El otro tipo de contrato de reaseguro que obra en autos, es más sencillo y se limita a reconocer el derecho del liquidador de recibir los fondos de reaseguros, sin diminución, ante la insolvencia de la aseguradora. Este contrato no contiene excepciones que merezcan discusión.

Un tercer tipo de contrato nada dispone sobre el tema de insolvencia por lo que sus cláusulas deben, naturalmente, someterse al rigor de los principios del Código de Seguros.

En suma, no percibimos que exista contradicción sustancial entre la mayoría de los contratos de reaseguro, según endosados, y el interés de distribución equitativa que se plasma en el Art. 40.120 del Código de Seguros. Ni entendemos tampoco que nuestra interpretación le quite a endosos como los de autos toda efectividad y propósito. Puede suceder que por razón de la falta de liquidez momentánea de la condición financiera general de una aseguradora no pueda ésta

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Rebollo López no intervinieron. El Juez Asociado Señor Díaz Cruz se inhibió.

---

enjugar una reclamación crecida dentro del término provisto. En esa situación una acción directa similar a la reconocida en los endosos, según permitida por el Art. 4.130 del Código, podría evitar la insolvencia de una aseguradora. Mas si, no obstante lo anterior, el asegurado adviene insolvente, entonces priva el criterio de preferencias consagrado en el Art. 40.120 del Código, y ningún endoso que lo enerve puede subsistir. Véase, *Cummings Wholesale Elec. Co., Inc.* v. *Home Owners Ins. Co.*, 492 F.2d 268, 273 (1974).