AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO, demandante y peticionaria, *v.* SEGUROS SAN MIGUEL, INC., ASEGURADORA PATRIA S.A., COMISIONADO DE SEGUROS DE PUERTO RICO ET ALS., demandados y recurridos.

*Número:* CC-2000-1011 *Resuelto:* 7 de abril de 2004

590

*Luis A. Defillo Rosas*, abogado de la parte peticionaria; *Juan A. Morales Rodríguez, Humberto Guzmán Rodríguez* y *Zaidée Acevedo Vilá*, abogados de la parte recurrida.

LA JUEZA PRESIDENTA SEÑORA NAVEIRA MERLY emitió la opinión del Tribunal.

Nos corresponde revisar una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones) en la que determinó que el foro que administra la liquidación de un asegurador insolvente retiene jurisdicción continua y exclusiva para atender toda materia, persona o reclamación relacionada con éste, pero no para atender reclamaciones de una compañía aseguradora que suscribe un contrato con un agente que a su vez es asegurado por un asegurador insolvente. Debemos resolver, además, a quién pertenece la prestación consignada por un reasegurador como resultado de un reaseguro.

I

El 1ro de julio de 1980, American International Insurance de Puerto Rico (AIICO), una corporación autorizada a operar como compañía de seguros de Puerto Rico, suscribió un contrato de agencia de seguros con Seguros San Miguel, Inc. (San Miguel). Conforme a este contrato, San Miguel cobraba, en carácter fiduciario, primas de póliza de seguros pertenecientes a AIICO.

AIICO requirió a San Miguel que prestase fianza para garantizarle el pago de las primas y San Miguel la obtuvo

de El Fénix de Puerto Rico (El Fénix) como fiadora principal.([1]) El Fénix luego reaseguró el 90% de tal riesgo con Reaseguradora Patria, S.A. (Patria). En el contrato de fianza y su reaseguro, otorgado el 2 de diciembre de 1996, se estableció que la responsabilidad de El Fénix quedaba limitada a $100,000 y la de Patria a $90,000 en grado de reaseguro. El contrato de reaseguro se limitaba a nombrar a El Fénix como la "Ceding Company", Patria como la reaseguradora y a San Miguel como Principal. Nada se dispuso en el contrato de reaseguro respecto a una causa directa (*cut through*) a favor de AIICO para reclamar directamente de Patria, conforme lo permite el Art. 4.130 del Código de Seguros de Puerto Rico (Código de Seguros), 26 L.P.R.A. sec. 413.

En septiembre de 1997 El Fénix (la compañía aseguradora) fue declarada insolvente por el Tribunal de Primera Instancia, por lo que se emitió una orden autorizando al Comisionado de Seguros de Puerto Rico (Comisionado) que iniciara un procedimiento de liquidación de los negocios de ésta. *Juan Antonio García v. El Fénix de Puerto Rico, Compañía de Seguros*, Civil Núm. KAC97-0946. En virtud de esta orden y al amparo de las disposiciones correspondientes del Código de Seguros, el tribunal autorizó al Comisionado a tomar posesión inmediata de todos los activos de El Fénix, cobrar todo lo adeudado a esa aseguradora y recuperar toda propiedad mueble o inmueble y derechos pertenecientes a la compañía.

---

([1]) Al respecto, en el contrato de fianza entre El Fénix de Puerto Rico (El Fénix) y Seguros San Miguel Inc. (San Miguel) de 2 de diciembre del 1996 se incluyó la cláusula siguiente:

"Know all men by these presents that Seguros San Miguel, Inc. as a Principal, hereinafter called the Principal, and El Fénix de Puerto Rico, a company duly created and existing under the laws of the Commonwealth of Puerto Rico, and having its principal office in San Juan, as Surety, hereinafter called Surety, are held and firmly bound unto AMERICAN INTERNATIONAL INSURANCE COMPANY OF PR, as Obligee, hereinafter called Owner, in the amount of ONE HUNDRED THOUSAND WITH 007100* * * * * * * * * ($* * *100,000.00) for the payment whereof Principal, and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents." Apéndice, *exhibit* III, pág. 155.

El 20 de febrero de 1998 AIICO presentó una demanda de cobro de dinero contra San Miguel, Patria, El Fénix y el Comisionado, en su carácter de liquidador de El Fénix. Reclamó a San Miguel el pago de $132,389, más intereses en concepto de primas de pólizas de seguros expedidas por AIICO, alegadamente colocadas y cobradas, pero no pagadas a la demandante. El Fénix, el Comisionado —en carácter de liquidador— y Patria fueron codemandados por razón de la fianza prestada en garantía del cumplimiento de San Miguel. Se incluyó como codemandado, además, al Sr. William Noel Tirado, ex presidente de San Miguel, a su esposa, la Sra. Edna Torres López, y a la sociedad de gananciales compuesta por ambos.

El Comisionado solicitó que se desestimara la demanda contra El Fénix, por encontrarse ésta en proceso de liquidación. A consecuencia de esta solicitud, el 15 de mayo de 1998 el Tribunal de Primera Instancia dictó Sentencia en la que archivó con perjuicio la reclamación judicial contra El Fénix y ordenó la continuación de los procedimientos en cuanto a las demás codemandadas. La codemandada Patria consignó el importe de su obligación como reaseguradora de El Fénix, o sea, la cantidad de $90,000, en la Secretaría del tribunal de instancia.

Mientras se desarrollaba el pleito de cobro de dinero incoado por AIICO, en el trámite de liquidación bajo el Capítulo 40 del Código de Seguros, 26 L.P.R.A. sec. 4001 *et seq.*, que se seguía llevando a cabo contra El Fénix, el Comisionado llegó a un acuerdo con el Grupo Asegurador Fénix (G.A.F.), entidad propietaria del 100% de las acciones de San Miguel. Dado que San Miguel tenía una deuda con El Fénix, ascendiente a $8,310,091, traspasó a esta última las acciones corporativas de San Miguel en pago de dicha deuda. Este acuerdo de transacción puso fin a la demanda que presentó el Comisionado contra San Miguel en cobro de dinero.

El 5 de octubre de 1998, el Comisionado solicitó su intervención en el pleito, en su capacidad de liquidador, de El Fénix. Alegó que tenía derecho a reclamar la suma consignada, ya que El Fénix había instado un pleito independiente en cobro de dinero contra San Miguel, en virtud del cual esta última pasó a formar parte de los activos de El Fénix y, por consiguiente, tenía una acreencia en contra de San Miguel. El Tribunal de Primera Instancia denegó la solicitud de intervención. De esta determinación, el Comisionado acudió al Tribunal de Apelaciones, y el 24 de febrero de 1999 dicho foro emitió una sentencia mediante la cual revocó la determinación del foro primario y le ordenó a éste que reevaluara la solicitud de intervención.

El 9 de marzo de 1999, el codemandado señor Tirado solicitó que se dictara sentencia sumaria a su favor. Alegó que mientras había sido presidente de San Miguel todas sus actuaciones habían sido en su carácter oficial. El 7 de febrero de 2000, el tribunal de instancia dictó sentencia sumaria parcial mediante la cual desestimó la demanda contra el señor Tirado y su esposa. El 10 de febrero de 2000, dicho foro emitió una sentencia en la que concluyó que carecía de jurisdicción para adjudicar la reclamación presentada contra San Miguel y desestimó la demanda.

Así las cosas, AIICO apeló ambas sentencias ante el Tribunal de Apelaciones. El 31 de octubre de 2000, dicho tribunal confirmó la sentencia sumaria parcial emitida el 7 de febrero de 2000 y revocó la sentencia de 10 de febrero de 2000, que impedía a AIICO continuar su causa de acción en cobro de dinero contra San Miguel, y la confirmó en todo lo demás. Inconforme con el anterior dictamen, AIICO acude ante nos mediante un recurso de *certiorari*. En síntesis, debemos resolver en primer lugar, si el contrato entre AIICO, San Miguel y el Fénix es un contrato de seguro regulado por el Código de Seguros, 26 L.P.R.A. sec. 4001 *et seq.*, o es un contrato de fianza regido por el Art. 1721 del

Código Civil, 31 L.P.R.A. sec. 4871. Además, debemos determinar a quién pertenece la prestación consignada por el reasegurador bajo una relación de reaseguro entre San Miguel (asegurado), El Fénix (asegurador) y Patria (reasegurador).

Expedimos el auto solicitado y con el beneficio de las comparecencias de las partes, procedemos a resolver.

A la luz de los hechos antes esbozados, resulta pertinente discutir las controversias siguientes:

1. Si el contrato entre AIICO, San Miguel y El Fénix es de seguro y está estregulado por el Código de Seguros, o es un contrato de fianza regido por el Código Civil en su Art. 1721, *supra*.

2. Bajo una relación de reaseguro entre San Miguel (asegurado), El Fénix (asegurador) y Patria (reasegurador), a quién pertenece la prestación consignada por el reasegurador.

## II

El Art. 1721 del Código Civil de Puerto Rico, *supra*, define el *contrato de fianza*. Dicho artículo dispone:

> Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste.
> Si el fiador se obligare solidariamente con el deudor principal, se observará lo dispuesto en las secs. 3101 a 3112 de este título.

Según J. Puig Brutau, en su obra *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. 2, Vol. 2, págs. 587–588:

> La fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es entre acreedor y deudor. Este deudor es el "otro" (en la definición de ENNECCERUS) por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como

una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación.

■ Por su parte, el Art. 1.020 del Código de Seguros, 26 L.P.R.A. sec. 102, define *seguro* como

... el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo. El término incluye reaseguro.

■ A su vez, el Art. 4.090 de dicho Código, 26 L.P.R.A. sec. 409, define *seguro de garantía*, describiendo el riesgo que cubre. En su parte pertinente, la citada disposición establece, en lo pertinente, que el

... seguro de garantía incluye ...
(2) Seguro de fidelidad, que garantiza la probidad de personas que ocupan puestos públicos o privados de confianza.
(3) Garantizar el cumplimiento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza.

Por otra parte, en 1 *Couch on Insurance 3rd* Sec. 1:6, pág. 11 (1995), se expresa:

... Essentially, insurance is a contract by which one party (the insurer), for a consideration that usually is paid in money, either in a lump sum or at different times during the continuance of the risk, promises to make a certain payment, usually of money, upon destruction or injury of "something" in which a third party (the insured) has an interest. (Escolio omitido.)

Toda vez que el Código de Seguros establece que un seguro de garantía incluye garantizar el cumplimiento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza, es ésta la fuente de derecho aplicable al caso ante nos. Veamos.

■ Sabido es que una ley especial que regula una materia específica prevalece sobre una ley de carácter general, como lo es el Código Civil, cuando existe un conflicto entre ambas leyes. *Córdova & Simonpietri v. Crown Ame-*

*rican*, 112 D.P.R. 797, 800 (1982). Es cuando existen deficiencias en la ley especial que procede acudir a las leyes generales para suplir dichas deficiencias. En el contrato en cuestión, tanto El Fénix como San Miguel se obligan solidariamente con AIICO a pagar la cantidad de $100,000 en caso de incumplimiento de contrato por parte de esta última. A tales efectos, dicho contrato dispone lo siguiente:

> NOW, THEREFORE, if the Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the oblige all loss and damage which said may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect. Apéndice, *exhibit* III, pág. 155.

Toda vez que del texto del contrato surge la clara intención de las partes de garantizar el contrato suscrito entre AIICO y San Miguel, el contrato deberá ser considerado como un contrato de garantía, según dispone el Art. 4.090 del Código de Seguros, 26 L.P.R.A. sec. 409.

Habiendo concluido que el contrato en disputa es un contrato de seguro de garantía, conforme al mencionado Art. 4.090 del Código de Seguros, debemos resolver cuál es el procedimiento a seguir para que AIICO pueda reclamar a San Miguel y a El Fénix el importe del seguro de garantía que le corresponde, según el contrato pactado.

## III

Con fecha de 16 de septiembre del 1997, en el caso *Juan Antonio García v. El Fénix de Puerto Rico, Compañía de Seguros*, caso Civil Núm. KAC 97-0946(906), la Sala Superior de San Juan del Tribunal de Primera Instancia emitió una orden en la que declaró insolvente a El Fénix y autorizó al Comisionado a iniciar un procedimiento

de liquidación en contra de dicho asegurador, nombrándole como su liquidador. El Código de Seguros provee para la protección del caudal del asegurador insolvente, estableciendo un procedimiento para su distribución ordenada entre los reclamantes del asegurador. Al emitirse una orden en la que se nombra un liquidador de un asegurador, no se presentará ninguna acción judicial contra el asegurador ni contra el liquidador en Puerto Rico, ni en cualquier otro lugar, o no se mantendrá ni instará una acción de esa naturaleza luego de emita dicha orden. 26 L.P.R.A. sec. 4021(1). También se prohíbe todo embargo, incautación o mandamiento de ejecución contra el asegurador o su activo. 26 L.P.R.A. sec. 4052. Una orden para liquidar los negocios de un asegurador del país designará al Comisionado como liquidador y lo autorizará para tomar posesión inmediata de los activos del asegurador y para administrarlos bajo exclusiva supervisión del tribunal. Entre los poderes del Comisionado están:

> (f) cobrar las deudas y dineros vencidos y reclamaciones pertenecientes al asegurador y a este fin:
> (1) radicar acción oportuna en otras jurisdicciones a fin de prevenir procedimientos de embargo o incautación de bienes contra tales deudas;
> (2) tomar todas las acciones necesarias y adecuadas para cobrar, conservar o proteger sus activos y propiedad, incluyendo el poder de vender, ajustar, transigir o ceder deudas con propósitos de cobro conforme a los términos y condiciones que considere más convenientes, y
> (3) agotar todos los recursos que tengan disponibles los acreedores para hacer valer sus reclamaciones. 26 L.P.R.A. sec. 4018(1)(f)(2).

■ A tenor con el citado Art. 40.210 del Código de Seguros, este Tribunal ha reconocido que los pleitos pendientes contra un asegurador en liquidación bajo un contrato de garantía deben ser desestimados y remitidos al foro administrativo del procedimiento de liquidación. *Intaco Equipment Corp. v. Arelis Const.*, 142 D.P.R. 648 (1997); *Calderón, Etc. v. The Commonwealth Ins. Co.*, 111

D.P.R. 153 (1981); *San José Realty, S.E. v. El Fénix de P.R.*, 157 D.P.R. 427 (2002), *Asoc. de Garantía v. Commonwealth Ins. Co.*, 114 D.P.R. 166 (1983). Nuestros previos pronunciamientos han sido a favor de la centralización del procedimiento de liquidación, o sea, una vez un tribunal declara insolvente a una compañía aseguradora y comienza el proceso de liquidación, todas las reclamaciones contra la aseguradora deben consolidarse en un solo foro: el foro administrativo. *San José Realty, S.E. v. El Fénix de P.R.*, supra.

El Código de Seguros, en su Art. 40.390 (26 L.P.R.A. sec. 4039), establece un orden de prioridad para el pago de reclamaciones que el liquidador estará obligado a seguir al momento de distribuir el caudal del asegurador insolvente. A tales efectos, dicho artículo dispone:

La prioridad en la distribución de reclamaciones del caudal del asegurador estará de acuerdo con el orden en que cada clase de reclamación se establece en esta sección. Toda reclamación en cada una de las clases se pagará en su totalidad o se retendrán fondos suficientes para su pago antes de que los miembros de la próxima clase reciban algún pago. No se establecerán subclases dentro de ninguna clase. El orden de distribución de las reclamaciones será:

. . . . . . . .

(3) *Clase 3.*—Todas las reclamaciones por pérdidas incurridas y cubiertas por las pólizas, incluyendo las reclamaciones de terceros reclamantes, todas las reclamaciones contra el asegurador por responsabilidad por lesiones corporales o por daño a, o destrucción de, propiedad tangible que no estén cubiertas por pólizas y todas las reclamaciones de una asociación de garantía o asociación de garantía extranjera. Todas las reclamaciones bajo pólizas de seguro de vida o anualidades, ya sean beneficio por muerte o anualidades o valores de inversiones, se considerarán como reclamaciones por pérdida. Aquella porción de cualquier pérdida, para la cual se provee indemnización en virtud de otros beneficios o ventajas recobradas por el reclamante, no será incluida en esta clase, a menos que sean beneficios o ventajas recobradas o recobrables en el cumplimiento de obligaciones alimenticias o por sucesión por muerte o como beneficio de un seguro de vida o como regalías. Ningún pago

hecho por un patrono a su empleado se considerará una regalía.

Toda vez que el inciso (3) de la citada disposición dispone las reclamaciones de pérdidas y cubiertas por pólizas, incluyendo reclamaciones de terceros, la reclamación de AIICO frente a El Fénix debe ser examinada a la luz de este inciso. Dicha reclamación debe ser considerada como parte del procedimiento de liquidación establecido en el Capítulo 40 del Código de Seguros, *supra.*

 En cuanto a la reclamación de AIICO contra San Miguel, debemos tomar en consideración el acuerdo entre El Fénix, San Miguel y G.A.F (entidad propietaria del 100% de las acciones de San Miguel), mediante el cual San Miguel traspasó a El Fénix el 100% de sus acciones corporativas en pago de la deuda que mantenía con esta última. Este acuerdo de transacción puso fin a la demanda que entabló el Comisionado contra San Miguel en cobro de dinero. En vista que El Fénix es propietario del 100% de las acciones de San Miguel, sus intereses resultarían afectados debido a la demanda de cobro de dinero instada por AIICO. Sin embargo, el hecho que el Comisionado, en su capacidad de liquidador, haya obtenido las acciones de San Miguel, no tuvo el efecto de convertirla en aseguradora *ipso facto* e *ipso jure.* El Art. 40.210 del Código de Seguros, 26 L.P.R.A. sec. 4021, aplica a las acciones contra un *asegurador* o contra el *liquidador.* No puede interpretarse que el alcance de dicha disposición se extienda a una corporación que actúa como agente de seguros y que tiene que responder ante acreedores de derechos fiduciarios.[2] Aunque el Comisionado adquirió todas las acciones corporativas de San Miguel, ésta todavía cuenta con su plena capacidad jurídica para demandar y ser demandada como persona jurídica. No obstante, es menester señalar que en *San José Realty, S.E. v. El Fénix de P.R.*, supra, resolvimos

---

[2] Véase *Ruiz v. New York Dept. Stores*, 146 D.P.R. 353, 369 (1998).

que una demanda contra un contratista, que se había obligado solidariamente con un asegurador que resultó insolvente, no debe proseguir su curso judicial por entender que al así hacerlo se producen efectos adversos los cuales se pretenden evitar, de manera que el Comisionado liquidador realice una liquidación de manera expedita, justa y ordenada. Establecimos que ante la existencia de un vínculo de solidaridad entre los contratistas (asegurados) y el asegurador insolvente, "forzoso es concluir que no pueden dividirse las reclamaciones entre distintos foros". Dispusimos de esa controversia de la manera siguiente:

> De permitirse la continuación de la acción respecto al otro demandado, surgirían los siguientes resultados indeseados, por ser contrarios a la política pública en que se asienta la legislación comentada: (a) siendo subsidiaria, aunque solidaria, la responsabilidad de la fiadora, de resultar victoriosa la parte reclamante en contra del fiado, tendrá aquella que repetir contra la fiadora en caso de que no pueda cobrar del fiado (lo cual es muy probable en los casos en que la reclamación sea en cobro de dinero por materialistas, suplidores u obreros, ya que frecuentemente el fiado resulta insolvente); (b) en cuyo caso siempre tendrá el reclamante que recurrir al Comisionado para tratar de obtener el pago total o parcial de la misma con el potencial peligro de que la decisión del Comisionado conflija con la determinación del Foro Judicial; (c) los dos supuestos anteriores exponen, tanto a la parte reclamante como al fiado, a múltiples procedimientos a los fines de que cada cual pueda hacer valer sus derechos contractuales mediante el fraccionamiento de procedimientos en foros diversos, con el consiguiente efecto de: (d) que tengan que incurrir en más gastos y (e) dilate aún más, innecesariamente, el cobro o recobro de lo debido; (f) lo cual, a su vez, conlleva al resultado de causar demora en la liquidación e incertidumbre respecto al efecto potencial en los activos de la aseguradora insolvente en liquidación al desconocerse si finalmente habrá de recaer una decisión final y firme en contra del fiado y el monto de la misma, antes de que pueda el Comisionado liquidador responder al reclamante. *San José Realty, S.E. v. El Fénix de P.R.*, supra, págs. 453–454.

En síntesis, el propósito de la consolidación de las reclamaciones es evitar y prevenir que alguien obtenga algún

tipo de preferencia, sentencia, embargo o privilegio en detrimento de los demás acreedores. Por tal razón, la demanda de AIICO contra San Miguel deberá ser desestimada.

## IV

La demandante alega que el Tribunal de Apelaciones erró al sostener que los fondos consignados por la codemandada Patria benefician a El Fénix y no a AIICO. Para estar en posición de contestar esta interrogante es menester analizar el contrato suscrito entre Patria, El Fénix y San Miguel. Como previamente expusimos, el contrato de reaseguro se limitó a nombrar a El Fénix como la "Ceding Company", a Patria como la reaseguradora y a San Miguel como principal. Nada se dispuso en dicho contrato respecto a una causa directa (*cut through*) a favor de AIICO para reclamar directamente de Patria, conforme lo permite el Art. 4.130 del Código de Seguros, 26 L.P.R.A. sec. 413. Con relación al contrato de reaseguro, en *Asoc. de Garantía v. Commowealth Ins. Co.*, supra, pág. 171, expresamos que éstos

> ... permiten, como presume Garrigues, que el asegurador pueda explotar en forma nivelada y homogénea su negocio, proveyéndole la manera de transferir a otro asegurador un riesgo excesivo o de naturaleza extraña a su gestión. Ahora bien, "y a pesar de la íntima relación que cada operación concreta de reaseguro mantiene siempre con otra operación de seguro directo, no puede decirse que sea un contrato accesorio de éste. La relación de ambos contratos entre sí no destruye su respectiva autonomía; sin perjuicio de que el seguro directo sea presupuesto necesario para el reaseguro, ambos contratos funcionan de modo autónomo y separado, sin que el asegurado tenga acción alguna contra el reasegurador ni éste contra aquél". (Citas omitidas.)

De otra parte, el Código de Seguros, en su Art. 4.130 (26 L.P.R.A. sec. 413), dispone:

El asegurado original o tenedor de una póliza, u otra persona que no fuere el asegurador cedente, que reclamare en virtud del seguro de cualquier asegurado o tenedor de póliza, no tendrá ningún derecho de acción directa contra el reasegurador que no esté específicamente expresado en el contrato de reaseguro o en un convenio específico entre el reasegurador y tal asegurado original o tenedor de póliza.

De lo expuesto previamente se colige que, no sólo nuestros previos pronunciamientos, sino la doctrina y la jurisprudencia de otras jurisdicciones —estatales y federales— avalan nuestra posición. *Morris & Co. v. Ins. Co.*, 279 U.S. 405 (1929); *Travelers Indem Co. v. Scor Reinsurance Co.*, 62 F.3d 74 (2do Cir. 1995). En la esfera federal se ha establecido que el contrato de reaseguro "involves no privity between the original insured and the reinsurer; the contract is entirely between reinsurer and reinsured, absent any special undertaking to asume a direct liability to the original insured". (Citas omitidas.) *A/S Ivarans Rederei v. Puerto Rico Ports Authority*, 617 F.2d 903, 905 (1er Cir. 1980).

Este derecho del asegurado para reclamar directamente al reasegurador fue examinado por este Tribunal en *Asoc. de Garantía v. Commonwealth Ins. Co*, supra. Allí se trataba de un grupo de asegurados por Commonwealth que obtuvieron, por gracia de endosos anejados a los contratos de reaseguro, el derecho a dirigirse contra los reaseguradores de Commonwealth. El asunto que se debía resolver era si ese derecho de acción directa contra el reasegurador, que se consagró en los endosos de reaseguro, era exigible ante la insolvencia del asegurador. Este Tribunal concluyó que el producto de los reaseguros estaba dentro del activo sujeto a distribución en la liquidación por insolvencia de la aseguradora y que no se le podía dar la preferencia a los asegurados reclamantes sobre los demás asegurados. Por su parte, el Art. 5.010(1)(h) del Código de Seguros, 26 L.P.R.A. sec. 501(1)(h), menciona los reaseguros como acti-

vos del reasegurador, al determinarse su situación económica.

En vista de que los fondos consignados por Patria provienen de un contrato de reaseguro existente con El Fénix, hoy en estado de insolvencia y sometido al proceso de liquidación bajo el Capítulo 40 del Código de Seguros, *supra*, forzoso es concluir que el producto de dicha prestación constituye un activo perteneciente a El Fénix.

## V

Por los motivos antes expuestos, *se revoca la sentencia dictada por el Tribunal por el Tribunal de Circuito de Apelaciones el 31 de octubre de 2000, en tanto ésta permite a AIICO continuar su causa de acción de cobro contra San Miguel y se confirma en cuanto a todo lo demás.*

El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita. Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.