EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| American International Insurance Company of Puerto Rico<br><br>　　　Demandante-Peticionario<br><br>　　　　　　v.<br><br>　Seguros San Miguel, Inc.;<br>　Aseguradora Patria S.A.,<br>　Comisionado de Seguros de<br>　Puerto Rico, et als.<br><br>　　　Demandados-Recurridos | Certiorari<br><br>2004 TSPR 54<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2000-1011

Fecha: 7 de abril de 2004

Tribunal de Circuito de Apelaciones:

　　　　　　Circuito Regional I

Juez Ponente:

　　　　　　Hon. Guillermo Arbona Lago

Abogado de la Parte Peticionaria:

　　　　　　Lcdo. Luis A. Defilló Rosas

Abogados de la Parte Recurida:

　　　　　　Lcda. Zaidee Acevedo Vilá
　　　　　　Lcdo. Juan A. Moldes Rodríguez

Materia: Cobro de Dinero e Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

American International
Insurance Company of
Puerto Rico

    Demandante Peticionario

       v.                    CC-2000-1011

Seguros San Miguel, Inc.;
Aseguradora Patria S.A.,
Comisionado de Seguros de
Puerto Rico, *et als.*

    Demandados Recurridos

Opinión del Tribunal emitida por la Jueza Presidenta señora NAVEIRA MERLY

San Juan, Puerto Rico a 7 de abril de 2004

    Nos corresponde revisar una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones) en la que determinó que el foro que administra la liquidación de un asegurador insolvente retiene jurisdicción continua y exclusiva para atender toda materia, persona o reclamación relacionada con éste, pero no para atender reclamaciones de una compañía aseguradora que suscribe un contrato con un agente que a su vez es asegurado por un asegurador insolvente. Debemos resolver, además, a quién

pertenece la prestación consignada  por un reasegurador como resultado de un reaseguro.

I

El 1 de julio de 1980, American International Insurance de Puerto Rico (en adelante AIICO) una corporación autorizada a operar como compañía de seguros de Puerto Rico, suscribió un contrato de agencia de seguros con Seguros San Miguel, Inc. (en adelante San Miguel).  Conforme a este contrato, San Miguel cobraba, en carácter fiduciario, primas de póliza de seguros pertenecientes a AIICO.

AIICO requirió a San Miguel que prestase fianza para garantizarle el pago de las primas y San Miguel la obtuvo de El Fénix de Puerto Rico (en adelante El Fénix) como fiadora principal.[1]  El Fénix luego reaseguró el 90%

---

[1]    Al respecto, en el contrato de fianza entre El Fénix y San Miguel de 2 de diciembre del 1996 se incluyó la siguiente cláusula:

> Know all men by these presents that Seguros San Miguel, Inc. as a Principal, hereinafter called the Principal, and El Fénix de Puerto Rico, a company duly created and existing under the laws of the Commonwealth of Puerto Rico, and having its principal office in San Juan, as Surety, hereinafter called Surety, are held and firmly bound unto AMERICAN INTERNATIONAL INSURANCE COMPANY OF PR, as Obligee, hereinafter called Owner, in the amount of ONE HUNDRED THOUSAND WITH 007100********* ($***100,000.00) for the payment whereof Principal, and Surety bind themselves, their heirs, executors, administrators, successors and assigns,

de tal riesgo con Reaseguradora Patria, S.A. (en adelante Patria). En el contrato de fianza y su reaseguro, otorgado el 2 de diciembre de 1996, se estableció que la responsabilidad de El Fénix quedaba limitada a $100,000.00 y la de Patria a $90,000.00 en grado de reaseguro. El contrato de reaseguro se limitaba a nombrar a El Fénix de Puerto Rico como la "Ceding Company", Reaseguradora Patria como la reaseguradora y a Seguros San Miguel como Principal. Nada se dispuso en el contrato de reaseguro respecto a una causa directa ("cut through") a favor de AIICO para reclamar directamente de Patria, conforme lo permite el Art. 4.130 del Código de Seguros, 26 L.P.R.A. sec. 413.

En septiembre de 1997, (la compañía aseguradora) El Fénix fue declarada insolvente por el Tribual de Primera Instancia, por lo que se emitió una orden autorizando al Comisionado de Seguros de Puerto Rico (en adelante el Comisionado) que iniciara un procedimiento de liquidación de los negocios de ésta. *Juan Antonio García v. El Fénix de Puerto Rico, Compañía de Seguros,* Civil Núm. KAC97-0946. En virtud de esta orden y al amparo de las disposiciones correspondientes del Código de Seguros, el tribunal autorizó al Comisionado a tomar posesión inmediata de todos los activos de El Fénix, cobrar todo lo adeudado a esa aseguradora y recuperar

---

jointly and severally firmly by these presents.

toda propiedad mueble o inmueble y derechos pertenecientes a la compañía.

El 20 de febrero de 1998, AIICO presentó una demanda de cobro de dinero contra San Miguel, Patria, El Fénix y el Comisionado en su carácter de liquidador de El Fénix. Reclamó a San Miguel el pago de $132,389.00, más intereses, en concepto de primas de pólizas de seguros expedidas por AIICO, alegadamente colocadas y cobradas pero no pagadas a la demandante. El Fénix, el Comisionado, en carácter de liquidador, y Patria fueron codemandados por razón de la fianza prestada en garantía del cumplimiento de San Miguel. Se incluyó como codemandado, además, al Sr. William Noel Tirado, ex presidente de San Miguel, a su esposa, la Sra. Edna Torres López, y a la sociedad de gananciales compuesta por ambos.

El Comisionado solicitó que se desestimara la demanda contra El Fénix, por encontrarse ésta en proceso de liquidación. A consecuencia de esta solicitud, el 15 de mayo de 1998, el Tribunal de Primera Instancia dictó Sentencia archivando con perjuicio la reclamación judicial contra El Fénix y ordenando la continuación de los procedimientos en cuanto a las demás codemandadas. La codemandada Patria consignó el importe de su obligación como reaseguradora de El Fénix, o sea, la cantidad de $90,000.00, en la secretaría del tribunal de instancia.

Mientras se desarrollaba el pleito de cobro de dinero incoado por AIICO, en el trámite de liquidación bajo el Capítulo 40 del Código de Seguros que se seguía llevando a cabo contra El Fénix, el Comisionado llegó a un acuerdo con el Grupo Asegurador Fénix (en adelante G.A.F.), entidad propietaria del 100% de las acciones de San Miguel. Dado que San Miguel tenía una deuda con El Fénix, ascendiente a $8,310,091.00, traspasó a esta última las acciones corporativas de San Miguel en pago de dicha deuda. Este acuerdo de transacción puso fin a la demanda que presentó el Comisionado contra San Miguel en cobro de dinero.

El 5 de octubre de 1998, el Comisionado solicitó intervención en el pleito, en su capacidad de liquidador, de El Fénix. Alegó que tenía derecho a reclamar la suma consignada, ya que El Fénix había instado un pleito independiente en cobro de dinero contra San Miguel, en virtud del cual esta última pasó a formar parte de los activos de El Fénix y, por consiguiente, tenía una acreencia en contra de Seguros San Miguel. El Tribunal de Primera Instancia denegó la solicitud de intervención. De esta determinación, el Comisionado acudió al Tribunal de Apelaciones y el 24 de febrero de 1999 dicho foro emitió sentencia mediante la cual revocó la determinación del foro primario y le ordenó a éste que reevaluara la solicitud de intervención.

El 9 de marzo de 1999, el codemandado señor Tirado solicitó que se dictara sentencia sumaria a su favor. Alegó que mientras había sido presidente de San Miguel todas sus actuaciones habían sido en su carácter oficial. El 7 de febrero de 2000, el tribunal de instancia dictó sentencia sumaria parcial mediante la cual desestimó la demanda contra el señor Tirado y su esposa. El 10 de febrero de 2000, dicho foro emitió una sentencia en la que concluyó que carecía de jurisdicción para adjudicar la reclamación presentada contra San Miguel y desestimó la demanda.

Así las cosas, AIICO apeló ambas sentencias ante el Tribunal de Apelaciones. El 31 de octubre de 2000, dicho tribunal confirmó la sentencia sumaria parcial emitida el 7 de febrero de 2000 y revocó la sentencia de 10 de febrero de 2000, que impedía a AIICO continuar su causa de acción en cobro de dinero contra San Miguel, y la confirmó en todo lo demás. Inconforme con el anterior dictamen, AIICO acude ante nos mediante recurso de certiorari. En síntesis, debemos resolver en primer lugar, si el contrato entre AIICO, San Miguel y el Fénix es uno de seguro, regulado por el Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4001 *et seq.*, o es un contrato de fianza regido por el Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871. Además, debemos determinar a quién pertenece la prestación consignada por el reasegurador bajo una relación de reaseguro entre

San Miguel (asegurado), El Fénix (asegurador) y Patria (reasegurador).

Expedimos el auto solicitado y con el beneficio de las comparecencias de las partes, procedemos a resolver.

A la luz de los hechos antes esbozados, resulta pertinente discutir las siguientes controversias:

1.    Si el contrato entre AIICO, San Miguel y El Fénix es uno de seguro, regulado por el Código de Seguros de Puerto Rico, 26 L.P.R.A sec. 4001 *et seq.* o es un contrato de fianza regido por el Código Civil en su Artículo 1721, 31 L.P.R.A. sec. 4871.

2.    Bajo una relación de reaseguro entre San Miguel (asegurado), El Fénix (asegurador) y Patria (reasegurador), a quién pertenece la prestación consignada por el reasegurador.

II

El Art. 1721 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4871, define el contrato de fianza. Dicho artículo dispone: "Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo este. Si el fiador se obligare solidariamente con el deudor principal, se observará lo dispuesto en las secs. 3101 a 3112 de este título".

Según Puig Brutau, en su obra *Fundamentos de Derecho Civil*, Tomo 2, Vol. 2, 2da ed., Barcelona, Ed. Bosch, 1982, págs. 587-588:

> La fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es entre acreedor y deudor. Este deudor es el "otro" (en la definición de ENNECCERUS) por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación .

Por su parte, el Art. 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102 define seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo. El término incluye reaseguro".

A su vez, el Art. 4.090, de dicho Código, 26 L.P.R.A. sec. 409, define el término seguro de garantía describiendo el riesgo que cubre. En su parte pertinente, la citada disposición establece que "seguro de garantía incluye ... (2) Seguro de fidelidad, que garantiza la probidad de personas que ocupan puestos públicos o privados de confianza. (3) Garantizar el cumplimiento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza". Por otra parte, *Couch on Insurance*, 3d ed., 1997, § 1:6 expresa:

> Essentially, insurance is a contract by which
> one party (the insurer), for a consideration
> that usually is paid in money, either in a
> lump sum or at different times during the
> continuance of the risk, promises to make a
> certain payment, usually of money, upon
> destruction or injury of "something" in which
> a third party (the insured) has an interest.

Toda vez que el Código de Seguros establece que un seguro de garantía incluye el garantizar el cumplimiento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza, es ésta la fuente de derecho aplicable al caso ante nos. Veamos.

Sabido es que una ley especial que regula una materia específica prevalece sobre una ley de carácter general, como lo es el Código Civil, cuando existe un conflicto entre ambas leyes. *Córdova & Simonpietri v. Crown American,* 112 D.P.R. 797, pág. 800 (1982). Es cuando existen deficiencias en la ley especial que procede acudir a las leyes generales para suplir dichas deficiencias. En el contrato en cuestión, tanto El Fénix como San Miguel se obligan solidariamente con AIICO a pagar la cantidad de $100,000.00 en caso de incumplimiento de contrato por parte de esta última. A tales efectos, dicho contrato dispone lo siguiente:

> NOW, THEREFORE, if the Principal shall well
> and truly keep, do and perform, each and
> every, all and singular, the matters and
> things in said contract set forth and
> specified to be by the said Principal kept,
> done and performed at the time and in the
> manner in said contract specified, and shall
> pay over, make good and reimburse to the
> oblige all loss and damage which said may
> sustain by reason of failure or default on the

part of said Principal, then this obligation
shall be void; otherwise, to be and remain in
full force and effect.

Toda vez que del texto del contrato surge la clara intención de las partes de garantizar el contrato suscrito entre AIICO y San Miguel, el mismo deberá ser considerado como un contrato de garantía según dispone el Art. 4.090, 26 L.P.R.A. sec. 409.

Habiendo concluido que el contrato en disputa es un contrato de seguro de garantía, conforme al mencionado Art. 4.090 del Código de Seguro, *supra*, debemos resolver cual es el procedimiento a seguir para que AIICO pueda reclamar a San Miguel y a El Fénix el importe del seguro de garantía que le corresponde según el contrato pactado.


III

Con fecha de 16 de septiembre del 1997, en el caso *Juan Antonio García v. El Fénix de Puerto Rico, Compañía de Seguros*, Civil Núm. KAC 97-0946 (906), la Sala Superior de San Juan del Tribunal de Primera Instancia emitió una orden declarando insolvente a El Fénix y autorizando al Comisionado a iniciar un procedimiento de liquidación en contra de dicho asegurador, nombrándole como su liquidador. El Código de Seguros, 26 L.P.R.A. sec. 4001 *et seq.*, provee para la protección del caudal del asegurador insolvente estableciendo un procedimiento para una ordenada distribución del mismo entre los

reclamantes del asegurador. Al emitirse una orden nombrando un liquidador de un asegurador, no se radicará ninguna acción judicial contra el asegurador ni contra el liquidador en Puerto Rico ni en cualquier otro lugar, o se mantendrá ni instará una acción de esa naturaleza luego de emita dicha orden. 26 L.P.R.A. 4021(1). También se prohíbe todo embargo, incautación o mandamiento de ejecución contra el asegurador o su activo. 26 L.P.R.A. sec. 4052. Una orden para liquidar los negocios de un asegurador del país designará al Comisionado como liquidador y lo autorizará para tomar posesión inmediata de los activos del asegurador y para administrarlos bajo exclusiva supervisión del tribunal. Entre los poderes del Comisionado están:

> (f) cobrar las deudas y dineros vencidos y reclamaciones pertenecientes al asegurador y a este fin:
> (1) radicar acción oportuna en otras jurisdicciones a fin de prevenir procedimientos de embargo o incautación de bienes contra tales deudas;
> (2) tomar todas las acciones necesarias y adecuadas para cobrar, conservar o proteger sus activos y propiedad, incluyendo el poder de vender, ajustar, transigir o ceder deudas con propósitos de cobro conforme a los términos y condiciones que considere más convenientes, y
> (3) agotar todos los recursos que tengan disponibles los acreedores para hacer valer sus reclamaciones. 26 L.P.R.A. sec. 4018 (1)(f)(2).

A tenor con el citado Art. 40.210, *supra*, este Tribunal ha reconocido que los pleitos pendientes contra un asegurador en liquidación bajo un contrato de

garantía deben ser desestimados y remitidos al foro administrativo del procedimiento de liquidación. *Intaco Equipment Corp. v. Arelis Const.,* 142 D.P.R. 648 (1997); *Calderon Rosa-Silva & Vargas v. The Commonwealth Insurance Co.,* 11 D.P.R. 153 (1981); *San Jose Realty, S.E. v. El Fénix de Puerto Rico,* Op. de 23 de julio de 2002, 2002 JTS 101, *Asociación de garantía de Seguros Misceláneos v. Commonwealth Insurance Co., et al.,* 114 D.P. R. 166 (1983). Nuestros previos pronunciamientos han sido a favor de la centralización del procedimiento de liquidación, o sea, una vez un tribunal declara insolvente a una compañía aseguradora y comienza el proceso de liquidación, todas las reclamaciones contra la aseguradora deben consolidarse en un solo foro; el foro administrativo. *San José Realty, S.E., supra.*

El Código de Seguros, en su Art. 40.390, 26 L.P.R.A. sec. 4039, establece un orden de prioridad para el pago de reclamaciones que el liquidador vendrá obligado a seguir al momento de distribuir el caudal del asegurador insolvente. A tales efectos, dicho artículo dispone:

> La prioridad en la distribución de reclamaciones del caudal del asegurador estará de acuerdo con el orden en que cada clase de reclamación se establece en esta sección. Toda reclamación en cada una de las clases se pagará en su totalidad o se retendrán fondos suficientes para su pago antes de que los miembros de la próxima clase reciban algún pago. No se establecerán subclases dentro de ninguna clase. El orden de distribución de las reclamaciones será:

...

(3) *Clase 3.*--Todas las reclamaciones por pérdidas incurridas y cubiertas por las pólizas, incluyendo las reclamaciones de terceros reclamantes, todas las reclamaciones contra el asegurador por responsabilidad por lesiones corporales o por daño a, o destrucción de, propiedad tangible que no estén cubiertas por pólizas y todas las reclamaciones de una asociación de garantía o asociación de garantía extranjera. Todas las reclamaciones bajo pólizas de seguro de vida o anualidades, ya sean beneficio por muerte o anualidades o valores de inversiones, se considerarán como reclamaciones por pérdida. Aquella porción de cualquier pérdida, para la cual se provee indemnización en virtud de otros beneficios o ventajas recobradas por el reclamante, no será incluida en esta clase, a menos que sean beneficios o ventajas recobradas o recobrables en el cumplimiento de obligaciones alimenticias o por sucesión por muerte o como beneficio de un seguro de vida o como regalías. Ningún pago hecho por un patrono a su empleado se considerará una regalía.

Toda vez que el inciso (3) de la citada disposición contempla las reclamaciones de pérdidas incurridas y cubiertas por pólizas, incluyendo reclamaciones de terceros, la reclamación de AIICO frente a El Fénix debe ser examinada a la luz de este inciso. Dicha reclamación debe ser considerada como parte del procedimiento de liquidación establecido en el Capítulo 40 del Código de Seguros, 26 L.P.R.A. 101 *et. seq.*

En cuanto a la reclamación de AIICO contra San Miguel, debemos tomar en consideración el acuerdo entre El Fénix, San Miguel y G.A.F (entidad propietaria del

100% de las acciones del San Miguel), mediante el cual San Miguel traspasó a El Fénix el 100% de sus acciones corporativas en pago de la deuda que mantenía con esta última. Este acuerdo de transacción puso fin a la demanda que entabló el Comisionado contra San Miguel en cobro de dinero. En vista que El Fénix es propietario del 100% de las acciones de San Miguel, sus intereses resultarían afectados debido a la demanda de cobro de dinero instada por AIICO. Sin embargo, el hecho que el Comisionado, en su capacidad de liquidador, haya obtenido las acciones de San Miguel, no tuvo el efecto de convertir a la misma en aseguradora *ipso facto* e *ipso jure*. El Art. 40.210 del Código de Seguros, 26 L.P.R.A. sec. 4021, es aplicable a las acciones contra un **asegurador** o contra el **liquidador.** No puede interpretarse que el alcance de dicha disposición se extienda a una corporación que actúa como agente de seguros y que tiene que responder ante acreedores de derechos fiduciarios.[2] Aunque el Comisionado adquirió todas las acciones corporativas de San Miguel, ésta todavía cuenta con su plena capacidad jurídica para demandar y ser demandada como persona jurídica. No obstante, es menester señalar que en San José Realty S.E., *et al.*, *supra,* resolvimos que una demanda contra un contratista, que se había obligado solidariamente con

---

[2] Véase *Ruiz García v. New York Department Stores* 146 D.P.R. 353, 369 (1998).

un asegurador que resultó insolvente, no debe proseguir su curso judicial por entender que al así hacerlo se producen efectos adversos los cuales se pretenden evitar de manera que el Comisionado liquidador realice una liquidación de manera expedita, justa y ordenada. Establecimos que ante la existencia de un vínculo de solidaridad entre los contratistas (asegurados) y el asegurador insolvente "forzoso es concluir que no pueden dividirse las reclamaciones entre distintos foros". Dispusimos de esa controversia de la siguiente manera:

> De permitirse la continuación de la acción respecto al otro demandado, surgirían los siguientes resultados indeseados, por ser contrarios a la política pública en que se asienta la legislación comentada: (a) siendo subsidiaria, aunque solidaria, la responsabilidad de la fiadora, de resultar victoriosa la parte reclamante en contra del fiado, tendrá aquella que repetir contra la fiadora en caso de que no pueda cobrar del fiado (lo cual es muy probable en los casos en que la reclamación sea en cobro de dinero por materialistas, suplidores u obreros, ya que frecuentemente el fiado resulta insolvente); (b) en cuyo caso siempre tendrá el reclamante que recurrir al Comisionado para tratar de obtener el pago total o parcial de la misma con el potencial peligro de que la decisión del Comisionado conflija con la determinación del Foro Judicial; (c) los dos supuestos anteriores exponen, tanto a la parte reclamante como al fiado, a múltiples procedimientos a los fines de que cada cual pueda hacer valer sus derechos contractuales mediante el fraccionamiento de procedimientos en foros diversos, con el consiguiente efecto de: (d) que tengan que incurrir en más gastos y (e) dilate aún más, innecesariamente, el cobro o recobro de lo debido; (f) lo cual, a su vez, conlleva al resultado de causar demora en la liquidación e incertidumbre respecto al efecto potencial en los activos de la

aseguradora insolvente en liquidación al desconocerse si finalmente habrá de recaer una decisión final y firme en contra del fiado y el monto de la misma, antes de que pueda el Comisionado liquidador responder al reclamante.

En síntesis, el propósito de la consolidación de las reclamaciones es evitar y prevenir que alguien obtenga algún tipo de preferencia, sentencia, embargo o privilegio en detrimento de los demás acreedores. Por tal razón, la demanda de AIICO contra San Miguel deberá ser desestimada.

IV

La demandante alega que el Tribunal de Apelaciones erró al sostener que los fondos consignados por la codemandada Patria benefician a El Fénix y no a AIICO. Para estar en posición de contestar esta interrogante es menester analizar el contrato suscrito entre Patria, El Fénix y San Miguel. Como previamente expusimos, el contrato de reaseguro se limitó a nombrar a El Fénix como la "Ceding Company", a Patria como la reaseguradora y a San Miguel como principal. Nada se dispuso en dicho contrato respecto a una causa directa ("cut through") a favor de AIICO para reclamar directamente de Patria, conforme lo permite el Art. 4.130 del Código de Seguros, 26 L.P.R.A. sec. 413. Con relación al contrato de reaseguro, en *Asoc. de Garantía v. Commowealth Ins. Co.*, 114 D.P.R. 166, 171 (1983), expresamos que éstos:

permiten, como presume Garriques, que el asegurador pueda explotar en forma nivelada y homogénea su negocio, proveyéndole la manera de transferir a otro asegurador un riesgo excesivo o de naturaleza extraña a su gestión. Ahora bien, 'y a pesar de la íntima relación que cada operación concreta de reaseguro mantiene siempre con otra operación de seguro directo, no puede decirse que sea un contrato accesorio de éste. La relación de ambos contratos entre sí no destruye su respectiva autonomía; sin perjuicio de que el seguro directo sea presupuesto necesario para el reaseguro, ambos contratos funcionan de modo autónomo y separado, sin que el asegurado tenga acción alguna contra el reasegurador ni éste contra aquél'. (Citas Omitidas.)

De otra parte, el Código de Seguros en su Art. 4.130, 26 L.P.R.A. sec. 413, dispone:

El asegurado original o tenedor de una póliza, u otra persona que no fuere el asegurador cedente, que reclamare en virtud del seguro de cualquier asegurado o tenedor de póliza, no tendrá ningún derecho de acción directa contra el reasegurador que no esté específicamente expresado en el contrato de reaseguro o en un convenio específico entre el reasegurador y tal asegurado original o tenedor de póliza.

De lo expuesto previamente se colige que, no solo nuestros previos pronunciamientos, sino la doctrina y la jurisprudencia de otras jurisdicciones -estatales y federales- avalan nuestra posición. *Morris & CO. v. Skandinavia Ins. Co*, 279 U.S. 405, *Travelers Indem Co. v. Scor Reinsurance Co.*, 62 F.3d 74. En la esfera federal se ha establecido que el contrato de reaseguro "involves no privity between the original insured and the reinsurer; the contract is entirely between reinsurer and reinsured, absent any special undertaking

to asume a direct liability to the original insured". *Ivarans Rederei v. Puerto Rico Ports Authority*, 617 F.2d 903, 905 (1980). (Citas Omitidas.)

Este derecho del asegurado para reclamar directamente al reasegurador fue examinado por este Tribunal en *Asoc. de Garantía v. Commonwealth Ins. Co*, *supra*. Allí se trataba de un grupo de asegurados por Commonwealth que obtuvieron, por gracia de endosos anejados a los contratos de reaseguro, el derecho a dirigirse contra los reaseguradores de Commonwealth. El asunto a resolver era si ese derecho de acción directa contra el reasegurador que se consagró en los endosos de reaseguro, era exigible ante la insolvencia del asegurador. Este Tribunal concluyó que el producto de los reaseguros estaba dentro del activo sujeto a distribución en la liquidación por insolvencia de la aseguradora y que no se le podía dar la preferencia a los asegurados reclamantes sobre los demás asegurados. Por su parte, el Art. 5.010(1)(h) del Código de Seguros, 26 L.P.R.A. sec. 501(1)(h), menciona los reaseguros como activos del reasegurador, al determinarse la situación económica del mismo.

En vista que los fondos consignados por Patria provienen de un contrato de reaseguro existente con el Fénix, hoy en estado de insolvencia y sometido al proceso de liquidación bajo el Capítulo 40 del Código de Seguros, forzoso es concluir que el producto de dicha

prestación constituye un activo perteneciente a la Fénix.

V

Por los motivos antes expuestos, se revoca la sentencia dictada por el Tribunal por el Tribunal de Apelaciones el 31 de octubre de 2000, en tanto ésta permite a AIICO continuar su causa de acción de cobro contra San Miguel y se confirma en cuanto a todo lo demás.

Miriam Naveira Merly
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

American International
Insurance Company of
Puerto Rico

    Demandante Peticionario

      v.                    CC-2000-1011

Seguros San Miguel, Inc.;
Aseguradora Patria S.A.,
Comisionado de Seguros de
Puerto Rico, *et als.*

    Demandados Recurridos

SENTENCIA

San Juan, Puerto Rico a 7 de abril de 2004

Por los fundamentos antes expuestos en la opinión que antecede, se dicta sentencia revocando la sentencia dictada por el Tribunal de Apelaciones el 31 de octubre de 2000, en tanto ésta permite a AIICO continuar su causa de acción de cobro contra San Miguel y se confirma en cuanto a todo lo demás.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. Los Jueces Asociados señor Rebollo López y señor Fuster Berlingeri no intervinieron.

PATRICIA OTÓN OLIVIERI
Secretaria del Tribunal Supremo