ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARLIZ DE LA CRUZ HERNÁNDEZ<br><br>Apelante<br><br>v.<br><br>RIMAS ENTERTAINMENT, LLC Y OTROS<br><br>Apelados | KLAN202401123 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV01925<br><br>Sobre: Derechos de Imagen Derechos Morales de Autor; Daños y Perjuicios |
| CARLIZ DE LA CRUZ HERNÁNDEZ<br><br>Apelada<br><br>v.<br><br>RIMAS ENTERTAINMENT, LLC Y OTROS<br><br>Apelantes | KLCE202401359 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV01925<br><br>Sobre: Derechos de Imagen Derechos Morales de Autor; Daños y Perjuicios |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Juez Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 14 de febrero de 2025.

Comparecen Carliz De La Cruz Hernández ("señora De La Cruz"), Rimas Entertainment, LLC y Rimas Classic, LLC ("Rimas") mediante los recursos clasificados alfanuméricamente como, KLAN202401123 y KLCE202401359[1], respectivamente, y nos solicitan que revoquemos la *Sentencia Parcial* emitida el 13 de septiembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). Mediante el referido dictamen, el TPI declaró *Ha Lugar*, de manera parcial, las solicitudes de desestimación instadas por Rimas y Benito Martínez Ocasio ("señor Martínez

---

[1] Se acoge como una apelación, por ser lo procedente en Derecho. No obstante, conservará su clasificación alfanumérica.

Ocasio"), por dejar de exponer una reclamación que justifique la concesión de un remedio.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia Parcial* apelada.

**I.**

El 1 de marzo de 2023, la señora De La Cruz instó ante el TPI una *Demanda* en contra de Rimas, el señor Martínez Ocasio, Noah Assad, LLC y Noah Kamil Assad Byrne. En síntesis, la señora De La Cruz alegó que, creó y grabó con su voz la frase "*Bad Bunny, Baby*", la cual fue utilizada en "*intros*" de las canciones del señor Martínez Ocasio, sin su consentimiento o autorización escrita.

Particularmente, la parte demandante alegó que ella y el señor Martínez Ocasio, quienes mantuvieron una relación de noviazgo durante varios años, decidieron que sería una idea cautivadora que, seguido del nombre artístico del señor Martínez Ocasio, se incluyera la palabra "*baby*". Por consiguiente, adujo que, en el 2015, a solicitud del señor Martínez Ocasio, se grabó diciendo "*Bad Bunny, baby*", utilizando los "*voice notes*" de su celular. La señora De la Cruz señaló que el aludido "*intro*" fue utilizado sin su consentimiento en diversos conciertos del señor Martínez Ocasio y en las canciones: (1) "*Pa´ Ti*", lanzada en el 2016, y; (2) "*Dos Mil 16*", publicada en el 2022.

Así dispuesto, la señora De la Cruz Hernández presentó las próximas causas de acción: (1) daños, al amparo de la *Ley de Derechos Morales*; (2) daños y perjuicios, en virtud del Art. 1536 del Código Civil; (3) compensación por enriquecimiento injusto; (4) compensación bajo de la doctrina de actos propios; (5) daños, al amparo de la *Ley del Derecho sobre la Propia Imagen*; (6) violación a su derecho a la intimidad, y; (7) violación a todos los derechos antes mencionados por el uso no autorizado de la *grabación* en los conciertos del señor Martínez Ocasio en Puerto Rico.

Tras varias instancias procesales, el 8 de mayo de 2024, el señor Martínez Ocasio y RIMAS presentaron, respectivamente, solicitudes de

desestimación, al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. En resumidas cuentas, los demandados expusieron que las alegaciones contenidas en la *Demanda* no cumplieron con el estándar de plausibilidad exigido por las Reglas de Procedimiento Civil. Arguyeron, además, que las causas de acción que involucraban la canción "*Pa´ Ti*" estaban prescritas, toda vez que esta fue lanzada en el 2016.

De igual forma, alegaron que, la señora De la Cruz Hernández le concedió al señor Martínez Ocasio una licencia implícita para el uso del estribillo en las obras musicales.

A su vez, puntualizaron que la reclamación al amparo de la *Ley del Derecho sobre la Propia Imagen* era improcedente porque el "*intro*" no fue utilizado para un propósito comercial, requisito indispensable para la aplicación del estatuto. De la misma manera, expusieron que el estribillo no satisfacía los requisitos de originalidad y creatividad necesarios para activar una protección al amparo de la *Ley de Derechos Morales*.

Así, también, los demandantes adujeron que la acción de daños y perjuicios bajo el Art. 1536 del Código Civil, *supra*, no procedía porque sería duplicativa a la reclamación de daños bajo la *Ley de Derechos Morales*. Cónsono con lo anterior, esgrimieron que, operaba el principio de especialidad, el cual establecía que, ante la existencia de una ley especial, se hacía innecesaria la aplicación del Código Civil. Por tanto, arguyeron que procedía la desestimación de las reclamaciones sobre daños y perjuicios al amparo de las disposiciones del Código Civil.

Por otro lado, señalaron que las doctrinas de enriquecimiento injusto y actos propios son doctrinas en equidad que solo operaban en ausencia de un cuerpo legal que aplicara a la controversia. Así pues, expusieron que, toda vez que la señora De la Cruz presentó sus reclamaciones al amparo de la *Ley del Derecho sobre la Propia Imagen* y la *Ley de Derechos Morales*, la aplicación de las aludidas doctrinas era improcedente.

Finalmente, expresaron que no existía una causa de acción independiente por el uso del estribillo en los conciertos del señor Martínez

Ocasio, ya que la reclamación estaba dirigida a contabilizar los alegados daños bajo las demás causas de acción.

Por su parte, el 10 de junio de 2024, la señora De la Cruz notificó su *Oposición a Mociones de Desestimación*. Ante la alegación de que la demandante presuntamente accedió al uso de su voz, arguyó que nunca consintió de manera implícita o explícita. Añadió que, de la única manera que se pueden ceder los derechos de imagen es bajo consentimiento escrito.

En cuanto a la alegación de que las reclamaciones relacionadas a la canción *"Pa´ Ti"* estaban prescritas, adujo que las causas de acción estaban vigentes porque se eran daños sucesivos.

A su vez, sobre la improcedencia de las causas de acción bajo las leyes especiales, expuso que el uso de su voz en las canciones del señor Martínez Ocasio recogía los criterios necesarios para presentar una causa de acción al amparo de la *Ley del Derecho sobre la Propia Imagen*, así como bajo la *Ley de Derechos Morales*. Especificó que el estribillo era una obra original, al amparo de la *Ley de Derechos Morales de Autor*, toda vez que la frase *"Bad Bunny, baby"* nunca había sido utilizada. De igual manera, discutió que su voz fue utilizada para agregar valor y ayudar a vender un bien comercial, cumpliendo así con el propósito comercial requerido por la *Ley del Derecho sobre la Propia Imagen*.

Por otro lado, arguyó que no procedía la desestimación de las reclamaciones instadas en virtud de las doctrinas de enriquecimiento injusto y actos propios. Particularmente, razonó que las leyes especiales bajo las cuales se presentó la demanda permitían la acumulación de causas. Cónsono con lo anterior, expresó que las reclamaciones no eran excluyentes entre sí.

Acerca de la reclamación bajo el derecho a la intimidad, la señora De La Cruz señaló que la misma era una independiente a la causa instada bajo la *Ley del Derecho sobre la Propia Imagen*. Expuso que, en el caso de autos, el derecho constitucional a la intimidad no quedó excluido o limitado por la referida ley especial, por ende, ambas causas podían coexistir.

Por último, referente a las causas de acción relacionadas a los conciertos, la señora De la Cruz argumentó que la reclamación estaba basada en el uso de la voz de la demandante, sin su consentimiento, en cada uno de los conciertos en Puerto Rico.

Aquilatadas las solicitudes de desestimación y su correspondiente oposición, el 13 de septiembre de 2024, el foro de instancia emitió una *Sentencia Parcial*, mediante la cual declaró *Ha Lugar*, de manera parcial, las solicitudes de desestimación instadas por la parte demandada. En lo aquí pertinente, el foro apelado desestimó las siguientes causas de acción: (1) derecho a la integridad y de atribución, bajo la *Ley de Derechos Morales de Autor*; (2) enriquecimiento injusto por el uso comercial y no comercial de la grabación; (3) actos propios, por la intervención de terceras personas para negociar el uso de la voz de la señora De la Cruz; (4) derecho a la intimidad, y; (5) violación a los derechos antes mencionados por el uso no autorizado de la *grabación* en los conciertos del señor Martínez Ocasio en Puerto Rico. En cambio, el TPI mantuvo la causa de acción por daños y perjuicios en modalidad vicaria, por el uso no consentido de la *grabación* en la canción "*Dos Mil 16*", y por el uso comercial de imagen en la aludida obra musical sin autorización de la señora De la Cruz, al amparo de la *Ley del Derecho sobre la Propia Imagen.*

Inconforme, el 30 de septiembre de 2024, Rimas presentó una *Moción de Reconsideración Parcial con relación a "Sentencia Parcial" del 13 de septiembre de 2024*. De igual forma, ese mismo día, la señora De La Cruz instó una *Moción de Reconsideración.*

El foro de instancia declaró *No Ha Lugar* la solicitud de reconsideración instada por RIMAS, mediante *Resolución* notificada el 14 de noviembre de 2024. Asimismo, el 16 de noviembre de 2024, el TPI emitió otra *Resolución* en la que denegó la moción de reconsideración presentada por la señora De la Cruz.

Insatisfecha aún, el 16 de diciembre de 2024, la señora De la Cruz acudió ante nos mediante *Recurso de Apelación,* clasificado

alfanuméricamente como KLAN202401123. La señora De la Cruz realizó los siguientes señalamientos de errores:

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar bajo la Regla 10.2(5) de Procedimiento Civil la causa de acción de daños morales de autor al utilizar la voz y la frase de la Apelante sin su consentimiento, aunque tanto la voz y la frase y la combinación de ambas están protegidas según definidas por la ley especial.**

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar bajo la Regla 10.2(5) de Procedimiento Civil de todas las causas de acción de la demanda sobre la canción "Pa Ti" ya que el derecho de la Apelante sobre el uso de su voz y frase en dicha canción no están prescrita por ser daños sucesivos.**

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar bajo la Regla 10.2(5) de Procedimiento Civil la causa de acción independiente sobre las violaciones al derecho de imagen no comercial de la Apelante, que surge del derecho constitucional de la intimidad.**

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar bajo la Regla 10.2(5) de Procedimiento Civil todas las causas de acción de la demanda sobre el uso de las canciones "Pa Ti" y "Dos Mil 16" en la gira de conciertos, ya que el derecho de la Apelante sobre el uso de su voz y frase en ambas canciones son acciones independientes a la grabación del disco.**

Por otra parte, ese mismo día, Rimas compareció ante esta Curia mediante *Solicitud de Certiorari*, clasificada alfanuméricamente como KLCE202401359, y le imputó al foro de instancia la comisión de los siguientes errores:

> **Erró el TPI al no desestimar la causa de acción al amparo de la Ley 139-2011, a pesar de que la demanda no expone una reclamación con relación al supuesto uso no consentido del estribillo para propósitos comerciales según definido en esa ley.**

> **Erró el TPI al negarse a desestimar la causa de acción de daños y perjuicios bajo el Código Civil, a pesar de que existe una ley especial que gobierna la reclamación y, en cualquier caso, que no se pueden duplicar remedios.**

El 15 de enero de 2025, el señor Martínez Ocasio, el señor Assad Byrne y Rimas presentaron, respectivamente, sus alegatos en oposición al KLAN202401123. Por otra parte, el 24 de enero de 2025, la señora De La Cruz notificó su oposición al recurso instado por Rimas. Perfeccionado el

recurso y contando con la comparecencia de las partes, nos encontramos en posición de resolver.

## II.

### -A-

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company,* 2024 TSPR 99, 214 DPR ___ (2024); *León Torres v. Rivera Lebrón,* 204 DPR 20, 40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba". *Rivera Candela v. Universal Insurance Company, supra* (citando a J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño,* 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92). Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569-570 (2001).

No obstante, cuando la reclamación judicial instada carezca de alegaciones específicas o suficientes, la parte adversa tiene el derecho de solicitar la desestimación a tenor con la Regla 10.2(5) de Procedimiento Civil, *supra,* 32 LPRA Ap. V, R. 10.2(5). Véase, también, *Eagle Security v. Efrón Dorado,* 211 DPR 70, 83 (2023). En específico, el precitado inciso reglamentario dispone que procede la desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2(5). Ahora bien, como norma general, no procede la desestimación salvo se deduzca con toda certeza que el demandante no tiene derecho a

remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012).

En estos casos, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security v. Efrón Dorado*, *supra*, pág. 85. Particularmente le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida". Íd. Ello evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 213 DPR 523, 534 (2024); *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003).

Conviene señalar que, el Tribunal Supremo de Puerto Rico en *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 397 (2022), discute el examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

> [A]l interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *Comisión v. González Freyre et al.*, 211 DPR 579, 615 (2023). Si luego comprende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones

conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros, supra,* pág. 534, citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307. En cambio, si concluye que las alegaciones no cumplen con el estándar de suficiencia le corresponde denegar la petición de desestimación.

**-B-**

Nuestro ordenamiento jurídico confiere una causa de acción en daños y perjuicios a todo aquel que sufra un daño por las acciones u omisiones culposas o negligentes de otro. *González Cabán v. JR. Seafood et al.*, 199 DPR 234 (2017). El antiguo Art. 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, así como el Art. 1536 del Código Civil de 2020, 31 LPRA sec., regula la responsabilidad civil extracontractual y establece que el que por culpa o negligencia le ocasione daño a otro, viene obligado a repararlo.[2]

Para que prospere una acción por daños y perjuicios bajo este artículo, es necesario probar la ocurrencia de una acción u omisión culposa o negligente que ocasiona un daño y la existencia del nexo causal entre ambos. *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 177 (2008). En otras palabras, procede la reparación de un daño cuando se demuestran los siguientes elementos: (1) la existencia de una acción u omisión producto del acto ilícito extracontractual; (2) la antijuricidad de la misma; (3) la culpa o negligencia del agente; (4) la producción de un daño, y; (5) la relación de causa o efecto entre la acción u omisión y el daño. *Valle v. ELA*, 157 DPR 1, 14 (2002). Recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios. *SLG Colón-Rivas v. ELA*, 196 DPR 855 (2016).

A su vez, acerca del resarcimiento del daño, el Art. 1538 del Código Civil de 2020, 31 LPRA sec. 10803, dispone lo siguiente:

---

[2] Ambas disposiciones son de aplicación en el pleito de autos, toda vez que al originarse la reclamación de daños y perjuicios relacionada a la canción "*Pa´ Ti*" regía el Código Civil de 1930.

La reparación de los daños se efectúa en dinero, mediante la reintegración específica o una combinación de los remedios anteriores, a elección del perjudicado, **siempre y cuando no haya una duplicación del resarcimiento**.

No obstante, cuando el acto u omisión constituye delito, se realiza de forma dolosa o con grave menosprecio a la vida, la seguridad y la propiedad ajena, el juzgador puede imponer una indemnización adicional que no sea superior al monto del daño causado.

(Énfasis suplido)

En otras palabras, el Código Civil impide la duplicidad de indemnizaciones por concepto de daños.

Por otra parte, ante las controversias relacionadas al momento en que el agraviado conoció o debió conocer el daño, nuestro Tribunal Supremo reconoció dos tipos de daños: (1) daños continuados, y; (2) daños sucesivos. *Galib Frangie v. El Vocero de P.R.*, 138 DPR 560, 574 (1995). Los daños continuados son aquellos producidos por:

[U]no o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas, sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca –por ser previsible– el carácter continuado ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto. *Toro Rivera v. ELA y otros,* 194 DPR 393, 417 (2015). (Citas omitidas).

En ese sentido, los daños continuados son el resultado de un acto ilícito y no de una pluralidad de actos particulares. *Íd.*

A su vez, los daños sucesivos se definen como aquella:

[S]ecuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aún continuamente, pero que se van conociendo en momentos distintos entre los que medió un lapso de tiempo finito, **sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable**. (Énfasis suplido) (Citas omitidas). *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 168 (2007).

De esta forma, los daños sucesivos constituyen una cadena de daños unitarios, individuales y concretos, que se producen en intervalos finitos de tiempo y producen efectos jurídicos distintos. *Íd.*

**-C-**

La Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho a la intimidad del ser humano, al preceptuar que "*[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar*". Art. II, Sec. 8, Const. ELA, LPRA, Tomo 1. El derecho a la intimidad opera *ex propio vigore*, es decir, no requiere de ley habilitadora que le proporcione vida. *Figueroa Ferrer v. E.L.A.,* 107 DPR 250, 259, 275 (1978); *Arroyo v. Rattan Specialties, Inc.*, 117 DPR 35, 64 (1986). Debido a su importancia fundamental, nuestro más Alta Curia determinó que "*la protección de lo privado opera por su propia fuerza y puede hacerse valer entre personas privadas, eximiéndolas así del requisito de acción estatal necesario para activar los derechos constitucionales de los ciudadanos*". *Vigoreaux Lorenzana v. Quizno's*, 173 DPR 254, 262 (2008).

Asimismo, en nuestra jurisdicción, se ha reconocido el derecho a la propia imagen como un derecho independiente, derivado del derecho a la intimidad. *Vigoreaux Lorenzana v. Quizno's*, *supra*, pág. 265. De tal modo que, "*[e]ste derecho otorga a su titular la facultad erga omnes de excluir la reproducción y publicación de la propia imagen por un tercero que carece del consentimiento para ello*". *Íd.*, pág. 266. Como corolario, el Tribunal Supremo reconoció cuatro causas de acción para la imposición de responsabilidad extracontractual, a saber: (1) la protección del individuo contra la intromisión indebida en su vida privada; (2) la prohibición de revelar o divulgar aspectos privados e íntimos de la persona; (3) la responsabilidad por distorsionar y representar bajo una falsa luz las características individuales de la persona, y; (4) **responsabilidad civil de todo aquel que se apropia indebidamente del nombre, imagen, o parecido de una persona para propósitos lucrativos o comerciales**. (Énfasis suplido). *Íd.*, págs. 267-268.

Ante la ausencia de legislación específica sobre el uso de la propia imagen, la Asamblea Legislativa aprobó la Ley Núm. 139 de 13 de julio de 2011, conocida como la "*Ley del Derecho sobre la Propia Imagen*", 32 LPRA sec. 3151 *et seq.* La ley define el concepto "*imagen*" como el "*nombre,*

*fotografía, retrato, voz, firma, atributo o cualquier representación de una persona que sirva para identificar a esa persona, ante un observador o escucha promedio, mediante cualquier procedimiento o técnica de reproducción*". Art. 2 de la Ley 139-2011, 32 LPRA sec. 3151.

De igual manera, el referido estatuto precisa que "***propósito comercial***" comprende "***el uso de la imagen de una persona en conexión con el anuncio, la oferta de venta o la venta de un producto, mercancía, bien o servicio en el mercado***". *Íd.* A su vez, especifica que "***propósitos publicitarios***" se entenderá como "***el uso de la imagen de una persona al difundir o informar al público sobre un bien o servicio en el mercado a través de los medios de comunicación***, *incluyendo el uso en los anuncios institucionales*". (Énfasis suplido). *Íd.*

Sobre las causas de acción instadas al amparo del aludido estatuto, el Art. 3, 32 LPRA sec. 3152, dispone lo siguiente:

> Cualquier persona natural o jurídica que utilice la imagen de otra persona con fines o propósitos comerciales, mercantiles o publicitarios, **sin el consentimiento previo de ésta**, de la persona que posea una licencia sobre tal imagen, de los herederos en caso de haber fallecido o del agente autorizado de uno de éstos, responderá por los daños causados.
> En el evento de no obtenerse el consentimiento requerido en esta Ley, **la persona afectada podrá presentar una acción para detener la utilización de dicha imagen y para recobrar los daños causados**, incluyendo regalías dejadas de devengar o cualquier pérdida económica resultante de la violación del derecho aquí establecido.
> (Énfasis suplido)

Cónsono con lo anterior, la *Ley del Derecho sobre la Propia Imagen* otorga dichos remedios:

> El propietario del derecho a la propia imagen que encuentre que el mismo ha sido violentado **tendrá disponible el remedio de interdicto, así como una acción en daños y perjuicios.** El Tribunal fijará la cuantía de los daños tomando como base los siguientes elementos: el beneficio bruto que hubiera obtenido la parte infractora mediante el uso de la imagen en cuestión; el importe de la ganancia que la persona perjudicada hubiere dejado de percibir como resultado de la actuación de la parte demandada; el valor del menoscabo que la actuación del demandado le hubiera ocasionado al demandante; y cualquier otro factor que a juicio del tribunal cuantifique adecuadamente los daños.
> El tribunal, en su discreción, podrá fijar la cuantía de los daños en una cantidad que no exceda tres (3) veces la ganancia del demandado y/o la pérdida del demandante cuando determine que la violación fue intencional o de mala fe.

En la alternativa, el demandante podrá optar por solicitarle al tribunal, daños estatutarios. Los daños estatutarios podrán fijarse en una cuantía no menor de $750 ni mayor de $20,000 por violación, según el tribunal lo considere justo. En un caso en el cual el tribunal determine que la violación fue intencional o debido a una negligencia crasa, el tribunal, en su discreción, podrá aumentar la cuantía de daños estatutarios a una suma no mayor de $100,000 por violación. Cada violación bajo estos daños estatutarios será equivalente al acto de la utilización ilegal de la imagen del reclamante en un trabajo, independiente del número de copias que se hagan del trabajo en cuestión en un momento dado. Art. 4, 32 LPRA sec. 3153.

(Énfasis suplido)

Toda acción al amparo de la Ley 139-2011, *supra*, prescribe dentro de un (1) año, contado a partir de la fecha en que la persona agraviada advino o debió advenir en conocimiento de los hechos que originan a la causa de acción. Artículo 7 de la Ley 139-2011, 32 LPRA sec. 3156.

**-D-**

La Asamblea Legislativa aprobó la Ley Núm. 55 de 9 de marzo de 2012, conocida como la "*Ley de Derechos Morales de Autor de Puerto Rico*", 31 LPRA sec. 1401j *et seq.*, con la intención de: (1) lograr una mayor certeza y aclarar algunos aspectos de cómo aplican los derechos morales; (2) minimizar posibles choques con el esquema estatutario del "*Copyright Act*", y; (3) atemperar nuestras protecciones a las realidades de la era digital, de modo que no obstaculicen el desarrollo económico, educativo, cultural y creativo de la Isla. Véase, Exposición de Motivos.

El precitado estatuto define "*derechos morales*" como "*derechos exclusivos de un autor sobre su obra que existen por virtud de la relación personalísima entre el autor y su obra. Surgen al momento en que el autor fija la obra original en un medio tangible de expresión*". Art. 2 de la Ley 55-2012, 31 LPRA sec. 1401j. A su vez, la *Ley de Derechos Morales de Autor, supra,* dispone que "*obra*" constituirá la:

[C]reación original literaria, musical, visual (plástica o gráfica), dramática o de las artes interpretativas, artística, o de cualquier otro tipo de las que se producen con la inteligencia y que sea creativa, expresada en un medio, tangible actualmente conocido o que se invente en el futuro. *Íd.*

El autor a quien se le violenten sus derechos morales tendrá derecho al resarcimiento de los daños, obtener una indemnización económica y a solicitar interdictos temporales o permanentes para vindicar sus derechos. Art. 11 de la Ley 55-2012, 31 LPRA sec. 1401s. No obstante, toda acción al amparo de la Ley 55-2012, *supra*, deberá iniciarse dentro de tres (3) años desde que la persona afectada conoció o debió conocer del surgimiento de los hechos que dan base a la reclamación. Art. 12 de la Ley 55-2012, 31 LPRA sec. 1401t.

**-E-**

El principio de especialidad establece que cuando una ley especial regula una materia, esta prevalecerá sobre una ley de carácter general. *Córdova & Simonpietri* v. *Crown American*, 112 DPR 197, 800 (1982). Tal principio dimana del Artículo 27 del Código Civil del 2020, 31 LPRA sec. 5349, el cual establece que "*[l]as disposiciones de este Código se aplican supletoriamente a las materias regidas por otras leyes, **salvo cuando se disponga lo contrario***". (Énfasis suplido).

Sobre el particular nuestro más Alto Foro, en *A.I.I.Co. v. San Miguel*, 161 DPR 589, 597-598 (2004), expresó:

> Sabido es que **una ley especial que regula una materia específica prevalece sobre una ley de carácter general, como lo es el Código Civil, <u>cuando existe un conflicto entre ambas leyes</u>**. *Córdova & Simonpietri v. Crown American*, [*supra*], pág. 800. Es cuando existen deficiencias en la ley especial que procede acudir a las leyes generales para suplir dichas deficiencias.

(Énfasis suplido)

**III.**

Las partes nos solicitan la revisión de la *Sentencia Parcial* notificada el 13 de septiembre de 2024, mediante la cual el foro de instancia desestimó las siguientes causas de acción: (1) derecho a la integridad y de atribución; (2) enriquecimiento injusto por el uso comercial y no comercial del estribillo; (3) la doctrina de actos propios, por la intervención de terceras personas para negociar el uso de la voz de la señora De la Cruz Hernández; (4) derecho a la intimidad, y; (5) violación a los derechos antes mencionados por el uso no

autorizado de la *grabación* en los conciertos del señor Martínez Ocasio en Puerto Rico.

Por el contrario, el TPI denegó desestimar las restantes dos (2) reclamaciones: (1) daños y perjuicios, en modalidad vicaria, por el uso no consentido de la *grabación* en la canción "*Dos Mil 16*", en virtud del Art. 1536 del Código Civil, *supra*, y; (2) uso comercial de la imagen de la demandante en la aludida obra musical, al amparo de la *Ley de Derechos Morales, supra.*

### KLAN202401123

En primer lugar, atenderemos los errores señalados por la señora De La Cruz. A través del primer señalamiento de error, la demandante expresa que el foro apelado incidió al desestimar la causa de acción presentada al amparo de la *Ley de Derechos de Autor, supra.* La señora De La Cruz arguye que, a pesar de que la costumbre en el género urbano ha sido la de mencionar el nombre del artista en sus canciones, el hecho de añadirle la palabra "*baby*" al nombre artístico del señor Martínez Ocasio a la frase *"Bad Bunny, baby"* la convirtió en una original. Además, precisa que, aunque no sea dueña del estribillo, es propietaria de lo que hace especial la frase, a saber, su voz y la entonación provista.

En el caso de epígrafe, el TPI reconoció que la parte demandante contribuyó a la inclusión de la palabra "*baby*" y a la creación de la frase, sin embargo, particularizó lo siguiente:

> [L]a grabación, así como la frase que la constituye, se compone de tres palabras y aluden al nombre artístico de Martínez Ocasio. Tal acción tuvo el propósito de unirse a la "costumbre" de otros exponentes del género urbano que suelen mencionar sus nombres al iniciar una canción. Aunque también damos por cierto que lo pretendido con esto era transformar la referida "costumbre" en algo más creativo, ello resulta insuficiente para colocarnos en un escenario de propiedad intelectual. Después de todo, no podemos obviar que "el bien en cuestión" es una frase de tres palabras. No vemos razón para distanciarnos de una política pública que propende la estimulación artística, a la par que evita crear un monopolio sobre aspectos comunes o de dominio público.[3]

Así las cosas, el foro de instancia determinó que la señora De la Cruz no ostentaba un derecho propietario sobre el estribillo y, como consecuencia,

---

[3] Véase, Apéndice de la Parte Apelante en el KLAN202401123, págs. 39-40 (*Sentencia*).

desestimó la causa de acción al amparo de la *Ley de Derechos Morales de Autor, supra.*

La *Ley de Derechos Morales de Autor, supra,* define a la "*obra*" como aquella "***creación original** literaria, musical, visual (plástica o gráfica), dramática o de las artes interpretativas, artística, o de cualquier otro tipo **de las que se producen con la inteligencia y que sea creativa**".* (Énfasis suplido). Tal definición, unida a la costumbre prevaleciente en el género de música urbana, no nos lleva a concluir que la aludida frase sea una original y creativa, meritoria de protección intelectual. Como corolario, somos del criterio que el foro de instancia no incidió al desestimar la reclamación al amparo de la *Ley de Derechos Morales de Autor, supra.*

Mediante el segundo señalamiento de error, la demandante arguye que el foro primario erró al desestimar por prescripción las reclamaciones relacionadas a la canción "*Pa´ Tí*", toda vez que se trataban de daños sucesivos.

Según hemos discutido, nuestro más Alto Foro ha expresado que los daños sucesivos constituyen una secuencia de daños unitarios, individuales y concretos, que se producen en intervalos finitos de tiempo y producen efectos jurídicos distintos. Asimismo, el momento en que ocurrirán los daños subsiguientes no es previsible, ni es posible descubrirlo empleando diligencia razonable. *Rivera Prudencio v. Mun. de San Juan, supra.*

Al amparo de tal definición, nos resulta difícil adoptar la postura de la señora De la Cruz, al aludir que los presuntos daños derivados del uso de su voz en las canciones constituyen daños sucesivos. La parte demandante advino en conocimiento del uso de su voz en la canción "*Pa' Tí*" desde el momento de su publicación. De la misma manera, a partir del 2016, era previsible, sin necesidad de emplear diligencia razonable, que la canción seguiría siendo utilizada por el señor Martínez Ocasio y escuchada por sus seguidores.

El Código Civil establece que las reclamaciones extracontractuales prescriben al año (1) desde que la persona agraviada advino o debió advenir

en conocimiento del daño. Asimismo, la *Ley del Derecho sobre la Propia Imagen*, *supra*, también establece un término de un (1) año, contado a partir desde que la persona conoció o debió conocer el daño, para entablar una acción al amparo del referido estatuto. Por otra parte, la *Ley de Derechos Morales*, *supra*, otorga un plazo de tres (3) años para presentar una reclamación bajo la referida ley. Como resultado, toda causa de acción relacionada a la canción "*Pa' Ti*" se encuentra prescrita.

Por otro lado, a través de su tercer señalamiento de error, la señora De La Cruz arguye que el foro de instancia incidió al desestimar, bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, la reclamación que surge al amparo de su derecho a la intimidad. La parte demandante expone que su derecho a la intimidad se activó tan pronto los demandados utilizaron su voz sin su consentimiento. A su vez, la señora De La Cruz argumenta que la presentación de una causa de acción bajo la *Ley del Derecho sobre la Propia Imagen*, *supra*, no impide la acumulación de una reclamación bajo el derecho a la intimidad.

Si bien es cierto que una causa de acción en virtud del derecho a la intimidad es independiente de aquella al amparo de la *Ley del Derecho sobre la Propia Imagen*, *supra*, ambas reclamaciones deben surgir, de manera específica, de las alegaciones de la demanda. En el caso de marras, acerca de su derecho a la intimidad, la señora De La Cruz alegó lo siguiente:

> 108. Además, toda vez que De La Cruz expresó claramente que no consentía a su utilización, su publicación constituyó un acto de negligencia crasa, mala fe y, peor aún, **un ataque a su intimidad**, moral y dignidad ya que todas las partes demandadas tenían y tienen conocimiento de estos hechos y aun así decidieron ser temerarios e incumplir con las leyes.[4]

> (Énfasis suplido)

De igual manera, la señora De La Cruz señaló en la *Demanda* que, en caso de que el foro de instancia concluyera que su voz no fue utilizada con un propósito comercial, procedía la aplicación del derecho a la intimidad o

---

[4] Véase Apéndice de la Parte Apelante en el KLAN202401123, pág. 67 (*Demanda*).

derecho de imagen no comercial, según denominado por la parte demandante.

Como norma general, ante una solicitud de desestimación bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, el juzgador deberá dar por cierto todas las alegaciones bien hechas en la demanda. Si luego de examinar las alegaciones, el foro de instancia determina que la parte no tiene derecho a remedio alguno, deberá desestimar la reclamación.

Conforme surge de la *Sentencia Parcial*, el foro apelado desestimó la causa de acción al amparo del derecho a la intimidad, tras determinar que la señora De La Cruz no esbozó factores que revelaran cuál era la expectativa de intimidad que tenía en cuanto al uso de su voz.

Luego de examinar las alegaciones realizadas por la parte demandante, constatamos que las mismas no resultan suficientes para concluir que a la señora De la Cruz se le violentó su derecho a la intimidad. Nuestro examen revela que la parte demandante se limitó a señalar que el uso no autorizado de su voz constituyó un ataque a su intimidad, sin fundamentar la expectativa de intimidad que albergaba sobre el uso de su voz. Por todo lo cual, resulta forzoso concluir que el foro apelado no cometió un error al desestimar la reclamación instada en virtud del derecho a la intimidad.

Por último, mediante su cuarto señalamiento de error, la parte demandante cuestiona la desestimación de todas las reclamaciones relacionadas al uso de su voz en los conciertos del señor Martínez Ocasio en Puerto Rico. Examinado sosegadamente el expediente, concordamos con la determinación del foro primario, a los efectos de sostener que la parte demandante no especificó las disposiciones legales que permiten concluir que el uso de su voz en los conciertos son eventos separados a la grabación de las canciones. Permitir tales reclamaciones daría paso a la contabilización de todas las veces que las canciones han sido escuchadas dentro de Puerto Rico.

Indistintamente de lo anterior, entendemos que las reclamaciones relacionadas a los conciertos no son causas independientes de las que

surgen al amparo del lanzamiento de las canciones "*Pa´ Ti*" y "*Dos Mil 16*". Así dispuesto, no podemos concluir que el foro primario incidió al desestimar dichas causas de acción.

### KLCE202401359

En segundo lugar, procederemos a evaluar los errores señalados por Rimas. Mediante su primer señalamiento de error, Rimas le imputa al foro de instancia haber errado al no desestimar la causa de acción presentada en virtud de la *Ley del Derecho sobre la Propia Imagen, supra*. De manera específica, aduce que la voz de la señora De La Cruz no fue utilizada con un propósito comercial, requisito esencial para ser acreedor de un derecho bajo la aludida ley.

Según surge de la discusión que antecede, la *Ley del Derecho sobre la Propia Imagen, supra,* define "*propósito comercial*" como "***el uso de la imagen de una persona en conexión con el anuncio, la oferta de venta o la venta de un producto, mercancía, bien o servicio en el mercado***". (Énfasis suplido). De la *Demanda* surgen alegaciones suficientes relacionadas al presunto uso comercial de la voz de la señora De la Cruz Hernández, tales como:

> 15. Además de excluir su nombre de las obras artísticas creadas, los demandados utilizaron la voz distinguible de la demandante, Carliz De La Cruz Hernández, sin su consentimiento para canciones, discos, **promociones**, discos, conciertos en el mundo entero y plataformas sociales y musicales, televisión y radio.
>
> […]
>
> 107. La utilización de la frase "Bad Bunny Baby" con la voz de De La Cruz en la canción "Dos Mil 16" **se realizó con propósitos comerciales**, en contra de su voluntad y sin su consentimiento.
>
> […]
>
> 109. Asimismo, la publicación de la canción "Dos Mil 16" sin el consentimiento de Carliz fue realizada intencionalmente, de mala fe y **con ánimos de lucro**.[5]
>
> (Énfasis suplido)

---

[5] *Íd,* págs. 56 y 67.

Por ende, no nos parece errada la decisión del foro apelado de no desestimar la referida causa de acción. Resulta menester destacar que, el foro primario únicamente tuvo ante su consideración unas solicitudes de desestimación, por dejar de exponer una reclamación que amerite la concesión de un remedio. Ante ello, el juzgador venía obligado a tomar por ciertas todas las alegaciones y determinar si eran suficientes para sostener la reclamación al amparo del referido estatuto. De tal modo que, no procedía que el tribunal entrara a dilucidar si la inclusión de la voz de la demandante tuvo un propósito comercial. Tal ejercicio no correspondía a esta etapa de los procedimientos.

Como segundo señalamiento de error, Rimas alega que el foro apelado incidió al no desestimar la reclamación de daños y perjuicios instada al amparo del Art. 1536 del Código Civil, *supra*. Particularmente, esgrime que, en el pleito de epígrafe existe una ley especial que regula la reclamación de daños. De tal modo que, en caso de que la señora De La Cruz prevalezca en todas sus reclamaciones de daños, esto implicaría una duplicidad de remedios, lo cual el Código Civil impide.

Ciertamente, el Art. 1538 del Código Civil, *supra*, impide el doble resarcimiento de la indemnización en concepto de daños extracontractuales. No obstante, la prohibición sobre la duplicidad de partidas no obstaculiza la presentación de causas duales, tal como una reclamación de daños al amparo del Código Civil, *supra*, y de la *Ley del Derecho sobre la Propia Imagen*, *supra*. La ventilación de tales causas de acción no significa que, si la parte demandante obtiene un dictamen favorable en ambas, será resarcida doblemente, ya que únicamente recibirá una partida por los daños sufridos, según contabilizados.

Así las cosas, resulta forzoso concluir que el foro de instancia no erró al no desestimar la causa de acción en daños ventilada al amparo del Código Civil. La ley especial no restringe la facultad del Tribunal de ventilar ambas reclamaciones. De igual manera, debemos advertir que, en esta etapa de los

procedimientos, el foro primario no ha determinado si dicho estatuto es de aplicación al pleito de epígrafe.

Examinado el expediente, a la luz del derecho aplicable, no encontramos razón alguna para determinar que el foro de instancia hubiera actuado de manera ilegal, arbitraria o contrario a derecho.

**IV.**

Por los fundamentos que anteceden, se *Confirma* la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones